Kenneth MAYES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–0002–CR–92.

Supreme Court of Indiana.

March 13, 2001.

Paul T. Fulkerson, Skiles & Cook, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

Indiana's self-defense statute essentially provides that the defense is not available to a person who is committing a crime.

We interpret the statute to mean there must be an immediate causal connection between the crime and the confrontation. In this case, there was sufficient evidence before the jury to conclude that the crime of unlawful possession of a handgun was causally connected to the murder. Therefore, the judgment of the trial court is affirmed.

### Facts

Kenneth Mayes, his girlfriend Mary Dew ("Mary"), and her sister Joyce Dew ("Joyce") were spending time at Mayes' home in Indianapolis. According to Mayes, he discovered money missing from the pockets of his clothing that he had left in a bedroom while taking a shower. Mayes accused Mary of taking the money, and they began to argue heatedly. Mary and Joyce left the house, and Mayes followed them to the driveway where the couple continued arguing loudly. After awhile, Mary and Joyce began to walk away. Mayes returned to the house and grabbed his jacket which contained a handgun in one of the pockets. He then pursued Mary and Joyce, confronting them on the street. The couple stood approximately five feet from each other and resumed their heated verbal exchange. Mayes testified that Mary reached for her purse—a fact that Joyce disputed. In any event, Mayes contended he feared Mary was reaching for a handgun and thus he drew his own weapon and fired. Mary died as a result of five gunshot wounds to her chest, shoulder, arm, and back.

The State charged Mayes with murder and carrying a handgun without a license as a Class A misdemeanor. The State also sought enhancement to a Class C felony because he had been convicted of a felony within fifteen years of the present offense.[1] Mayes' sole defense at trial was that he shot Mary in self-defense. After the jury returned a verdict of guilty as charged, Mayes pleaded guilty to the enhanced gun charge. Thereafter, the trial court sentenced him to concurrent terms of sixty

years for murder and eight years for carrying a handgun without a license. This appeal followed. Additional facts are set forth below where relevant.

### Discussion

### I.

Mayes sought a self-defense instruction at trial, but over his objection the trial court instructed the jury as follows:

■ The defense of self-defense is defined by law as follows:

A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

A person is not justified in using force if:

1. He is committing, or is escaping after the commission[ ] of[,] a crime;

2. He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

R. at 81. Mayes acknowledges that the instruction tracks the language of the self-defense statute nearly verbatim. *See* I.C. § 35–41–3–2. His complaint however is with the declaration "[a] person is not

---

1. Ind.Code § 35–47–2–1, –23(c)(2)(B).

justified in using force if . . . he is committing . . . a crime." Mayes concedes that he possessed an unlicensed handgun when he shot his girlfriend and tacitly admits that doing so was a crime. He contends however that this is not the type of offense that should negate a claim of self-defense. We agree that in some instances a contemporaneous crime may not negate a claim of self-defense. In this case however Mayes' argument fails.

 A valid claim of self-defense is legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000). This is a long-standing tenet of the law in this jurisdiction that predates statutory codification. *See, e.g., Bryant v. State*, 106 Ind. 549, 7 N.E. 217, 219–20 (1886) (noting that principle of justifiable and excusable homicide on the ground of self-defense has been fully endorsed, approved, and acted upon in many recent decisions of this Court, well before the defense was codified in 1905). Indeed, the self-defense statute itself endorses the proposition that one is entitled to defend oneself under circumstances where it reasonably appears that a person is in danger of bodily harm: "[n]o person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary." I.C. § 35–41–3–2(a). The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Sales v. State*, 723 N.E.2d 416, 420 (Ind.2000). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Although penal statutes are not to be read so narrowly that they exclude cases they fairly cover, nonetheless, we conventionally construe penal statutes strictly against the State. *Id.*

A literal application of the contemporaneous crime exception would nullify claims for self-defense in a variety of circumstances and produce absurd results in the process. A similar view was expressed by

our Court of Appeals in a case very similar to the one before us. In *Harvey v. State*, 652 N.E.2d 876 (Ind.Ct.App.1995), the defendant shot the victim with an unlicensed firearm and claimed self-defense in the fatal shooting. The trial court instructed the jury, "A person who is not in his home or fixed place of business and is carrying a handgun without a license cannot by law claim the protection of the law of self defense." *Id.* at 876. The Court of Appeals found the jury instruction was erroneous because it ignored any nexus between the crime and the shooting. *Id.* at 877. Writing for the court, Judge Garrard observed:

> If subsection (d)(1) [of Indiana Code § 35–41–3–2] is to be taken literally, then no person may claim self defense if that person at the time he acts is coincidentally committing some criminal offense. For example, possession of a marijuana cigarette or the failure to have filed one's income tax returns could deny one the defense no matter how egregious, or unrelated, the circumstances that prompted the action. Read as a whole, the statute refutes such a construction.

*Id.* at 877. We agree and note this view has been shared by other jurisdictions that have considered the matter. *See, e.g., Oregon v. Doris*, 51 Or. 136, 94 P. 44, 53 (1908) ("[T]o hold that the mere fact that a person accused of a homicide was armed at the time, and that because of the misdemeanor resulting therefrom [possession of a concealed weapon] he shall be deprived of any right of self-defense, would lead to the absurd and unjust consequence in practically all cases of depriving the accused of any defense. . . ."); *South Carolina v. Leaks*, 114 S.C. 257, 103 S.E. 549, 551 (1920) (In a prosecution for homicide "[t]he causal connection between the unlawful act of gambling and the encounter arising during the progress of the game between the participants is too remote to destroy the right of self-defense."); *West Virginia v. Foley*, 128 W.Va. 166, 35

S.E.2d 854, 861 (1945) ("Whether [defendant] had a license to carry a pistol on the occasion he was armed is not relevant in the least to the common law right to arm for self-defense.").

We also observe that as applied to the facts of this case, if Mayes had previously obtained a valid license but it had expired one minute before he shot his girlfriend, then, if the statute is to be read literally, a self-defense claim would be unavailable. The legislature could not have intended that a defense so engrained in the jurisprudence of this State be dependent upon the happenstance of such timing.

■ We conclude that because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred. *Cf. Roche v. State,* 690 N.E.2d 1115, 1124 (Ind.1997) ("A person who kills while committing or attempting to commit a robbery is a person who kills while committing a crime and so the defense of self-defense is not available."). Having reached this conclusion however does not mean we agree that Mayes is entitled to reversal and a new trial.

■ The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for abuse of discretion. *Benefiel v. State,* 716 N.E.2d 906, 914 (Ind.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). To constitute an abuse of discretion, the instruction given must be erroneous, and the instruction taken as a whole must misstate the law or otherwise mislead the jury. *Id.* When determining whether a trial court erroneously gave or refused to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given. *Fields v. State,* 679 N.E.2d 1315, 1322 (Ind.1997).

■ There is no question in this case that the instruction correctly states the law—it is a near verbatim recitation of the self-defense statute. Nor does the record show that the instruction was covered by other instructions. The question here is whether there was evidence presented to support giving the instruction. More specifically, was there evidence demonstrating that but for Mayes' possession of an unlicensed handgun, the confrontation resulting in Mary's shooting death would not have occurred?

■ The record shows that after Mary and her sister left Mayes' home and walked away, Mayes went back into the house and grabbed his jacket which contained a handgun. On the one hand, the fact that Mayes did not have a license to possess the weapon would seem to have no bearing on its use in Mary's death. On the other hand, the jury could have concluded that but for Mayes' possession of the unlicensed handgun, Mary would still be alive because Mayes' unlicensed handgun was required, by law, to be kept at his dwelling, on his property, or at his fixed place of business. *See* I.C. § 35–47–2–1. Ultimately it is left to the jury, the factfinder in this case, to determine whether there is an immediate causal connection between Mayes' possession of an unlicensed firearm and Mary's death. This is not an issue that can be resolved by this Court as a matter of law. *Cf. Harvey,* 652 N.E.2d at 877 (finding that the trial court properly instructed the jury on the definition of self-defense, including the "committing a crime" provision, but erred by further instructing the jury that a person who possessed an unlicensed handgun could not claim self-defense). We conclude the trial

court's jury instruction on self-defense was not erroneous.[2]

## II.

The trial court sentenced Mayes to enhanced sentences of sixty years for murder and eight years for carrying a handgun without a license. Mayes challenges these sentences contending the trial court failed to identify any mitigating factors and did not state facts and circumstances underlying the aggravating factors. If a trial court uses aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must: (1) identify all of the significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is determined to be aggravating or mitigating; and, (3) articulate the court's evaluation and balancing of the circumstances. *Thacker v. State*, 709 N.E.2d 3, 9 (Ind.1999), *reh'g denied.*

Mayes argues that the trial court failed to identify any mitigating circumstances. The trial court must include a description of significant mitigating circumstances within the record if it reduces the presumptive sentence or uses mitigating circumstances to offset aggravating circumstances that serve to enhance the sentence. *Cooper v. State*, 687 N.E.2d 350, 354 (Ind.1997). However, an appellate court will affirm a sentence enhancement in spite of the trial court's failure to specifically articulate its reasons for enhancement if the record indicates that the court engaged in the evaluative processes and the sentence imposed was not manifestly

unreasonable. *Wright v. State*, 665 N.E.2d 2, 6 (Ind.Ct.App.1996). *See also Mitchem v. State*, 685 N.E.2d 671, 679 (Ind.1997) (using same rationale to find that the trial court's error of only providing a generalized statutory recitation for two aggravating factors does not demand remand).

Here, the trial court did not specifically outline the mitigating factors applied but recognized their existence and alluded to factors Mayes' counsel offered as considerations: Mayes acted in sudden heat, he turned himself in and confessed the day after the murder, his honorable and reliable character, and his remorsefulness. Additionally, the trial court stated there were mitigating factors but the "aggravators outweigh the mitigators." R. at 419. Although the trial court's sentencing statement is not a model of clarity, it is clear the trial court engaged in an evaluative process and properly considered significant mitigators.

The trial court identified two aggravating factors: the nature and circumstances of the crime and Mayes' prior criminal history. Both are statutory aggravators. *See* I.C. § 35–38–1–7.1(a)(2),–(b)(3). Regarding the first aggravating factor, the trial court specifically noted the violence of the act; Mayes shot Mary five times, including "in the back as she was ... either falling down or on the ground[....]" R. at 419. The "nature and circumstances" of a crime is a proper aggravating circumstance. *Thacker*, 709 N.E.2d at 10. In this case, the nature of the crime the number and type of shots

---

**2.** Mayes also is entitled to no relief on this claim for an additional reason. The record shows Mayes fired five shots at Mary, and at least one bullet struck her in the back as Mary was either falling down or already on the ground. Firing multiple shots undercuts a claim of self-defense. *Miller v. State* 720 N.E.2d 696, 700 (Ind.1999) (finding sufficient evidence to disprove the defendant's self-defense claim considering the defendant's aggressive behavior and that he fired multiple shots at the victim). *See also Birdsong v. State*, 685 N.E.2d 42, 46 (Ind.1997) (noting

that deadly force was unreasonable because victims were shot several times after being incapacitated); *Schlegel v. State*, 238 Ind. 374, 150 N.E.2d 563, 567 (Ind.1958) (holding that although the first shot might have been justified in self-defense, a second shot to the victim's body cannot be so justified when danger of death or great bodily harm ceases). Thus, there was sufficient evidence before the jury to reject Mayes' claim of self-defense notwithstanding the contemporaneous crime language contained in the instruction.

was proper to consider. *See Mitchem,* 685 N.E.2d at 680 (finding that the number of times a victim was shot is a proper consideration under the "nature and circumstances" of the crime aggravator).

■■■■ As to the second aggravator, the trial court did not specifically detail Mayes' criminal history. When a defendant's criminal history is used as an aggravating factor to support an enhanced sentence, the trial court must recite the incidents comprising the criminal history. *Battles v. State,* 688 N.E.2d 1230, 1235 (Ind.1997). Stating that the defendant has a criminal history is merely conclusory and must be substantiated by specific facts. *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986). Here, the statement of reasons for enhancing Mayes' sentences is deficient because the reference to his prior criminal history is not sufficiently individualized. However, this deficiency does not necessitate remand to articulate the specific facts. It is readily apparent, based on the presentence report and the prosecutor's comments in the record, that Mayes had a prior felony conviction for an offense in which he inflicted bodily injury on a victim. *See Adkins v. State,* 532 N.E.2d 6, 9 (Ind.1989) (observing that remand to articulate the aggravating circumstance of a history of criminal activity would be pointless and unnecessary because the specific facts underlying the aggravating factor were readily discernible from the record). We are satisfied that the trial judge engaged in the evaluative process and that the sentence was not manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, J., concur.

DICKSON, J., concurs in result.

BOEHM, J., concurs in result with separate opinion in which DICKSON, J., concurs.

BOEHM, Justice, concurring in result.

I agree that the conviction should be affirmed for the reasons given by the majority in footnote two of its opinion. However, I do not agree that the instruction was a correct statement of the law. The challenged instruction tracked the statute verbatim, and told the jury that: "A person is not justified in using force if ... [h]e is committing ... a crime." But as the majority points out, the statute does not mean what it appears to say because its judicial patina makes clear that not everyone engaged in "a crime" is deprived of the defense of self-defense. Accordingly, the recitation of the naked statutory language was not a proper statement of "the law."

I also believe that it is not proper to affirm the conviction here on the ground that the jury could have determined that there was a causal connection between Mayes' illegal possession of a weapon and his confrontation with the victim. If the jury had been properly instructed that there must be such a connection to negate self-defense, then I would affirm. But there was no instruction that a finding of a causal connection between the illegal activity and the confrontation was required. Accordingly, we have no basis to conclude that the jury made that finding.

More importantly, the majority would preclude a claim of self-defense wherever "but for" the defendant's commission of a crime, the confrontation with the victim would not have occurred. I am concerned that this "but for" test is too broad. There are many situations where "but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred," but where the defense of self-defense should be available. For example, take a situation similar to the one referred to in the majority opinion in *State v. Leaks,* 114 S.C. 257, 103 S.E. 549, 551 (1920). The defendant is illegally gambling and a fight erupts because the victim believes the defendant is cheating.

This leads to the victim's death. Under these circumstances, the defendant should be free to claim self-defense. Similarly, if the victim attempts to take marijuana from the defendant and it leads to an altercation and the victim's death, self-defense should be available. In either case, the majority's "but for" test may be thought to be satisfied, and, if so, the defendant would be precluded from raising self-defense. In general, commission of a non-violent crime with no inherently predictable violent outcome should not negate the defense of self-defense.

Because the courts have already taken considerable liberty with the language of this section to avoid draconian and obviously inappropriate results, I believe it is appropriate to fine-tune this tinkering. I suggest it would be preferable to phrase the issue as whether there is "an immediate causal connection" between the aspect of the defendant's activity that renders it criminal and the confrontation.[1] In the gambling incident, presumably a fight could also break out in a game with no illegal stakes and, in the marijuana hypothetical, an attempt to steal a lawfully possessed substance could as easily erupt into violence. In sum, I believe that the majority's conclusion is correct based on the reasoning of footnote two, but believe the test established is too broad and eliminates the defense in situations where it should rightly be available.

DICKSON, J., concurs.

---

**1.** Indiana appears to be unusual in purporting to deny self-defense to anyone committing a crime as opposed to those committing "forcible felonies." *See* Ill. Comp. Stat. 38/7–4 (2000); Kan. Stat. Ann. § 21–3214 (2000). The Model Penal Code does not contain a comparable provision.