**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JUSTIN R. WALL**
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT D. RATCLIFF,                )
                                   )
    Appellant-Defendant,        )
                                   )
        vs.                  )  No. 85A05-1205-CR-248
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.         )

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1202-FC-143

**December 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Robert D. Ratcliff ("Ratcliff") was convicted after a jury trial of Burglary, as a Class C felony,[1] and Auto Theft, as a Class D felony,[2] and was sentenced to an aggregate term of imprisonment of seven years, with one year suspended to probation. He now appeals.

We affirm.

## Issues

Ratcliff raises several issues for our review, which we restate as:

   I.   Whether the trial court erred when it instructed the jury concerning accessory liability;

   II.  Whether there was sufficient evidence to support Ratcliff's conviction; and

   III. Whether Ratcliff's sentence was inappropriate.

## Facts and Procedural History

Sometime after dark on January 25, 2012, Ratcliff called his friend, Brandon Freeman ("Freeman"), who previously worked at Drive Now Auto ("Drive Now") in Wabash. Ratcliff told Freeman that he had kicked in the back door to the Drive Now store, asked Freeman where to find money and car keys inside the dealership, and offered to give Freeman any money in the store in exchange for Freeman's help.

Ratcliff eventually took several sets of car keys from a lock box in the Drive Now store, and drove a burgundy-colored 2002 Chrysler Sebring off the lot. Ratcliff drove to the

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-43-4-2.5(b).

home of Dawn Shrock ("Shrock"), the mother of one of Ratcliff's childhood friends with whom he had lived at times, and showed Shrock the car. Upon learning that Ratcliff had stolen the car, Shrock told Ratcliff that he needed to return it and that, with the lot's sticker and balloon still on the car, he would likely be pulled over by police. After the sticker and balloon were removed, Ratcliff gave them to Shrock to throw away.

Before leaving Shrock's home, Ratcliff asked Shrock to inquire of her boyfriend, Jamie Johnson ("Johnson"), who was then incarcerated, about whether Johnson would allow Ratcliff to use the license plate from Johnson's car on the nearly-identical vehicle Ratcliff had taken from Drive Now. After making this request of Shrock, Ratcliff drove away, and called once to ask Shrock whether she had spoken with Johnson.

Shrock eventually did ask Johnson about the matter a few days later; Johnson ultimately contacted the Wabash City Police Department. Captain George Ryan Short ("Captain Short") of the Wabash City Police Department spoke with Johnson. Based on this conversation, Captain Short contacted Shrock, who had not yet disposed of the materials from the vehicle Ratcliff had stolen. Shrock delivered the items to Captain Short on February 1, 2012.

In the meantime, Ratcliff had driven the car to Portsmouth, Ohio, where some of his relatives lived. Eventually, an individual living in the house in Portsmouth where Ratcliff had been staying contacted police officials in Portsmouth with information concerning Ratcliff's whereabouts and the VIN number for the stolen car. The Portsmouth police in turn contacted the Wabash City Police Department, who confirmed that they were looking for

3

both Ratcliff and the car. Ratcliff was then arrested by Portsmouth police on February 18, 2012.

On February 20, 2012, Ratcliff was charged with Burglary and Auto Theft.

A jury trial was conducted on April 10 and 11, 2012. During the trial, Shrock testified that Ratcliff had implicated Freeman in the burglary, and evidence was introduced concerning two different sets of footprints in the snow outside the Drive Auto dealership. After the close of evidence, the State requested that the trial court instruct the jury concerning accessory liability with respect to the charges against Ratcliff. Ratcliff objected, but the trial court overruled the objection and issued the State's proposed instruction.

On April 11, 2012, the jury found Ratcliff guilty as charged. A sentencing hearing was conducted on May 7, 2012, at the conclusion of which Ratcliff was sentenced to seven years imprisonment for Burglary with one year suspended to probation, and three years imprisonment for Auto Theft. The terms of imprisonment were run concurrently, yielding an aggregate term of imprisonment of seven years, with one year suspended to probation. The trial court also entered a restitution order in the amount of $4,748.35.

This appeal ensued.

**Discussion and Decision**

Accessory Liability Instruction

We turn first to Ratcliff's argument that the trial court abused its discretion when it instructed the jury on accessory liability with respect to the charged offenses.

When reviewing a trial court's decision to give or refuse to give a party's tendered instruction, we consider "(1) whether the tendered instruction

4

correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given." Mayes v. State, 744 N.E.2d 390, 394 (Ind. 2001). The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse. Id.

Kane v. State, 976 N.E.2d 1228, 1230-31 (Ind. 2012).

Here, the State proffered and the trial court accepted the following instruction:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

    1)  Has not been prosecuted for that offense;

    2)  Has not been convicted of the offense; or

    3)  Has been acquitted of the offense.

(App. at 14.) The language of the instruction is identical to the language of Indiana Code section 35-41-2-4, which sets forth the offense of Aiding, Inducing, or Causing an Offense, and Ratcliff does not argue that the instruction was an incorrect statement of the law.

We thus turn to Ratcliff's argument that there was not sufficient evidence to support the instruction. At trial, Shrock testified that when Ratcliff brought the stolen car to her home, he told her that Freeman had helped him take the car from the Drive Now dealership. Shrock also testified that Ratcliff told her that he and Freeman had entered the dealership and that Freeman smoked marijuana in the dealership office while Ratcliff decided which of the dealership's cars he wanted to take.

Further, when Captain Short investigated the scene at Drive Now, he identified and photographed two different sets of footprints in the snow near the store. One of them, with

5

prints shaped like those from work boots, went from the back of the dealership to a key box. A second set of footprints was shaped "more like … a cowboy boot print," and was smooth and flat. (Tr. at 145-46.) Freeman testified that Ratcliff usually wore cowboy boots, and Shrock confirmed that "whether it's winter, summer, or fall … [m]ost of the time, [Ratcliff is] in cowboy boots." (Tr. at 133.)

Based upon this, we cannot conclude that there was insufficient evidence upon which the trial court could instruct the jury as to accessory liability.

## Sufficiency of the Evidence

Ratcliff further argues that there was insufficient evidence to sustain his convictions for Burglary and Auto Theft. Our standard of review in such cases is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

We address in turn each of the convictions from which Ratcliff now appeals.

### *Burglary*

To convict Ratcliff of Burglary, as a Class C felony, as charged, the State was required to prove beyond a reasonable doubt that on or between January 1, 2012, and January

6

26, 2012, Ratcliff broke and entered into the building or structure of Drive Now, with intent to commit a felony in it, namely, theft. I.C. § 35-43-2-1; App. at 35.

At trial, Chris Volkers ("Volkers"), the manager of the Drive Now location in Wabash, testified that he did not know Ratcliff and had never provided him with permission to enter the Drive Now building after business hours. After returning to the Drive Now store on January 26, 2012, Volkers noticed that car keys were missing from a lock box in the store, contacted police, and eventually discovered that the back door of the store had been broken.

Freeman testified that Ratcliff called Freeman's cell phone on the evening of January 25, 2012, and said "he kicked in the back door and had been right in the little back room and want[ed] me to go with him and show him where to go." (Tr. at 111.) Freeman testified that when he asked Ratcliff "where he was talking about," Ratcliff said he was at Drive Now. (Tr. at 111.) Freeman testified that Ratcliff knew he used to work there and that Ratcliff offered Freeman any money found inside the store if Freeman would come to the dealership to help.

Shrock testified that Ratcliff told her that he and Freeman had broken into the store. Shrock went on to testify that Ratcliff told her that he would not have broken into the store except that Freeman had told him where the money and car keys could be found.

To the extent Ratcliff now argues that there was little or no scientific or other forensic evidence of his involvement in the burglary, we decline his invitations to reweigh the evidence. The testimony offered by Freeman and Shrock is sufficient for a reasonable jury to

7

conclude beyond a reasonable doubt that Ratcliff burglarized the Drive Now dealership, and we therefore affirm his conviction on that count.

*Auto Theft*

Ratcliff was also convicted of Auto Theft, as a Class D felony. To convict Ratcliff of Auto Theft, as charged, the State was required to prove beyond a reasonable doubt that on or between January 1, 2012, and January 26, 2012, Ratcliff knowingly or intentionally exerted unauthorized control over a motor vehicle owned by Drive Now, with intent to deprive Drive Now of the vehicle's use or value. I.C. § 35-43-4-2.5(b); App. at 35.

At trial, Volkers testified that he did not know Ratcliff and had not authorized Ratcliff to drive the Chrysler Sebring taken from the dealership's lot. Freeman testified that Ratcliff called him on the evening of January 25, 2012, to find out where money and car keys for Drive Now's car inventory were kept. Shrock testified that when Ratcliff arrived at her home that night, he showed her the car, admitted that he had stolen the vehicle, and asked Shrock to help him obtain license plates and registration information from the nearly identical car belonging to Shrock's boyfriend, Johnson. Shrock testified that at first she thought Ratcliff was driving Johnson's car, but when she confronted Ratcliff about the origins of the car, he told her that, "This car is talking to me. It wants to be mine." (Tr. at 126.) Shrock testified that after the balloon and several stickers were removed from the car, she put them in the trash on Ratcliff's request, but still had the items when Captain Short sought to speak with her. Shrock provided the stickers and balloon to Captain Short, and the items were entered into evidence at trial without objection.

8

Officer Brett Ervin ("Officer Ervin"), a police officer in Portsmouth, Ohio, was present at the time of Ratcliff's arrest on February 18, 2012. He testified that he and other officers were directed to the house in which Ratcliff was staying by a call placed to dispatch by Fred Worthington, who met the police officers at the door of the residence. Ratcliff was located and arrested in the home and was found hiding in an upstairs bedroom. The Chrysler Sebring was found in the backyard of the house, and the VIN number of the car matched the records provided by management of Drive Now. Officer Ervin noted that parts appeared to have been removed from the car while it was in Ohio.

All of this is sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that Ratcliff committed Auto Theft, as charged. We therefore affirm Ratcliff's conviction on this count.

Sentencing

We turn now to Ratcliff's arguments concerning his sentencing. Ratliff contends that the trial court abused its discretion when it found certain aggravating circumstances and disregarded certain claimed mitigating circumstances. He also seeks to have us revise his sentence downward or suspend more of his sentence to probation.

The imposition of a sentence and its appellate review follows the scheme set forth in Anglemyer:

> To summarize, the imposition of sentence and the review of sentences on appeal should proceed as follows:
>
> 1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.

2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.

3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.

4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218.

To the extent Ratcliff challenges his sentence on the basis of the trial court's determination of aggravating and mitigating circumstances, we review that decision for an abuse of discretion.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Id. at 490-91.

Here, Ratcliff attacks the trial court's finding as aggravating circumstances that a lower sentence would depreciate the seriousness of his offense and that he did not express remorse. Only one valid aggravating circumstance need be found to impose an enhanced sentence. Smith v. State, 908 N.E.2d 1251, 1253 (Ind. Ct. App. 2009). "Even if a trial court improperly applies an aggravator, a sentence enhancement may be upheld when there is another valid aggravating circumstance." Edrington v. State, 909 N.E.2d 1093, 1097 (Ind.

Ct. App. 2009), trans. denied. Ratcliff does not challenge the validity of the use of his extensive prior criminal and juvenile history as an aggravating factor. Thus, even assuming the trial court found improper aggravating circumstances as Ratcliff now claims, we decline to conclude that the trial court abused its discretion in imposing an enhanced sentence.

Nor do we agree with Ratcliff that the trial court did not take proper account of any proffered mitigating circumstances. Ratcliff argues that his imprisonment would cause undue hardship to his minor child, and contends that the trial court disregarded this mitigating factor. The trial court did not disregard this matter; rather, the trial court concluded that Ratcliff's imprisonment would not constitute such a burden because Ratcliff had no history of employment or otherwise providing support for the child. And, given Ratcliff's extensive prior adult criminal history, we cannot conclude that the trial court improperly disregarded his young age as a mitigating circumstance upon sentencing. See Bostick v. State, 804 N.E.2d 218, 225 (Ind. Ct. App. 2004) (holding no abuse of discretion occurred where trial court did not find young age of defendant to be a mitigating circumstance where defendant was twenty-four years old at time of the offense). The trial court expressly found there to be no mitigating factors, and we cannot conclude that this was an abuse of discretion.[3]

---

[3] To the extent Ratcliff complains that the trial court mentioned a guilty plea and observes that he did not enter a guilty plea or plea agreement, we note that he makes no argument that he was prejudiced by this error. We therefore do not address the matter in our opinion today.

Finally, we turn to Ratcliff's argument that his sentence is inappropriate. In <u>Reid v. State</u>, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

The Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." <u>Cardwell v. State</u>, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor a sentence appropriate to the circumstances presented. <u>See id.</u> at 1224. One purpose of appellate review is to attempt to "leaven the outliers." <u>Id.</u> at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." <u>Id.</u> at 1224.

Ratcliff was convicted after a jury trial of Burglary, as a Class C felony, and Auto Theft, as a Class D felony. The sentencing range for Burglary, as charged, runs from two to eight years imprisonment, with a statutory advisory term of four years. I.C. § 35-50-2-6(a). The sentencing range for Auto Theft, as charged, runs from six months to three years, with an advisory sentence of eighteen months. I.C. § 35-50-2-7(a). Ratcliff was sentenced to seven

years of imprisonment for Burglary and three years of imprisonment for Auto Theft, with the terms run concurrently and one year of the sentence for Burglary suspended to probation.

Turning first to the nature of Ratcliff's offenses, Ratcliff kicked in the back door of the Drive Now dealership, and sought assistance from Freeman, a former employee, in locating items to steal. There is no evidence that Ratcliff obtained any money from the business. However, Ratcliff stole the 2002 Chrysler Sebring and multiple sets of car keys from the business. After obtaining the car, Ratcliff drove the vehicle to Portsmouth, Ohio, where the vehicle remained for nearly one month. Parts were removed from the vehicle. The owner of Drive Now, the Mike Anderson Auto Group ("Mike Anderson"), provided a victim's impact statement that indicated that it had purchased the vehicle as a trade-in for $3,250.00 and spent $1,207.35 to prepare the car for sale. After the burglary, five car keys were replaced at a cost of $10.00. After Ratcliff was arrested, the vehicle was towed from Ohio to Indiana at a cost of $411.00. Mike Anderson ultimately sold the vehicle at auction for $130.00, after which the car was destroyed. Thus, the nature of Ratcliff's offenses support sentences elevated from the statutory advisory terms.

Turning now to Ratcliff's character, we observe that he has a long history of adult criminal and juvenile delinquent activity. Ratcliff's criminal history in Indiana includes one felony conviction for strangulation, two misdemeanor convictions for possession of marijuana, and two misdemeanor convictions for battery. Ratcliff has also had probation revoked once before. In Ohio, Ratcliff has been convicted of misdemeanor illegal possession of alcohol, and has an extensive history of juvenile adjudications for numerous offenses that

13

would constitute domestic violence, aggravated assault, disorderly conduct, petty theft, and assault if committed by an adult.

Ratcliff has a long history of substance abuse. He has used alcohol since age ten and regularly consumed alcohol beginning at age thirteen. Ratcliff also began using marijuana regularly at age thirteen, and admitted to smoking the drug around ten times monthly. Prior to his arrest in this case, he remained sober for only two months since his release from detention as a juvenile in Ohio. Though Ratcliff has received mental health and substance abuse counseling, he admits to having manipulated prior counselors. Ratcliff has not held solid employment in the past, and was terminated from his most recent job because "drugs got in the way." (Tr. at 268.)

Taking together the nature of Ratcliff's offenses and his character, Ratcliff has not persuaded us that the trial court's imposition of an aggregate seven-year term of imprisonment, with one year suspended to probation, is inappropriate. We therefore decline his request that we revise his sentence.

## Conclusion

The trial court did not abuse its discretion when it issued a jury instruction concerning accessory liability. There was sufficient evidence to sustain Ratcliff's convictions for Burglary and Auto Theft. Ratcliff's sentence is not inappropriate under Appellate Rule 7(B).

Affirmed.

VAIDIK, J., and BROWN, J., concur.

14