## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2017, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robin Dalekilgore Peppers, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | March 9, 2017 <br><br> Court of Appeals Case No. 71A03-1610-CR-2493 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jenny Pitts Manier, Judge <br><br> Trial Court Cause No. 71D05-1408-CM-3095 |

**Bradford, Judge.**

# Case Summary

On the evening of August 2, 2014, Appellant-Defendant Robin D. Peppers became involved in a disagreement with Anastazia Troup, with whom Peppers had been living and was involved in a romantic relationship. During this disagreement, Peppers called Troup derogatory names, physically assaulted her, and smashed her cellular phone on the ground. Peppers was subsequently arrested and charged with Class A misdemeanor domestic battery and Class B misdemeanor battery. Peppers was found guilty of these charges following a September 14, 2016 jury trial. On October 14, 2016, the trial court merged the Class B misdemeanor battery charge into the Class A misdemeanor domestic battery charged and sentenced Peppers to a suspended 365-day sentence and six months of probation.

On appeal, Peppers contends that the trial court abused its discretion in instructing the jury. Specifically, Peppers argues that the trial court should not have instructed the jury as to certain statutory factors which the jury could consider in determining whether Peppers and Troup were "living as if spouses." In making this argument, Peppers asserts that the instruction setting forth these statutory factors unduly emphasized certain evidence. Concluding that the trial court did not abuse its discretion in instructing the jury, we affirm.

# Facts and Procedural History

[3]     As of August 2, 2014, Troup had been living with Peppers at his residence on North Olive Street in South Bend for approximately four months. At the time, Troup and Peppers were dating and had a sexual relationship. Troup regularly cleaned the house while she and Peppers lived together. She also paid the monthly rent and water bill because Peppers was unemployed at the time.

[4]     During the evening of August 2, 2014, Peppers and Troup began to argue after Peppers received text messages containing inappropriate pictures of nude women. Troup initially attempted to diffuse the situation by going into the parties' shared home. Peppers, however, followed Troup into the home, grabbed onto her arms and yelled at her. Peppers "hit the back of the chair" in which Troup was sitting, sending her "flying backwards." Tr. p. 56. Peppers's actions caused Troup to feel pain and although she was "trying not to cry, … [she] had tears running down [her] face because [Peppers] was in [her] face screaming at [her]." Tr. p. 59.

[5]     Troup then proceeded to the couple's shared bedroom and began placing her belongings in plastic trash bags. Peppers followed, "came storming through the house, slammed the bedroom door open and then slammed it shut behind him." Tr. p. 57. Peppers proceeded to yell at Troup, calling her a "wh[***]" and "a useless piece of s[***]." Tr. p. 57. Peppers then grabbed Troup by the arms, pushed her up against the wall, wrapped his hand around her throat, picked her up off the ground, and "proceeded to yell at [her] while [she] was gasping for air." Tr. p. 58. Peppers threw Troup onto the bed, grabbed her phone, and threw it to the other side of the bed "so [that she] could not reach

it." Tr. p. 58. At some point during the parties' dispute, Peppers slapped Troup across the face with an open hand, causing her pain.

[6] Eventually, Troup managed to collect her phone and free herself from Peppers and get outside of the home. Peppers "proceeded to follow [Troup] outside," "grabbed [her] phone out of [her] pocket," and "ran back in the house and locked the dead bolt … so that [Troup] could not get back into the house." Tr. pp. 58-59. When Troup was eventually able to enter the home, Peppers "took [Troup's] phone, took the SD card out of [the] phone, and then smashed [the] phone on the ground." Tr. p. 59.

[7] Troup drove to a nearby Family Dollar store and called 911. South Bend Police Officers Michael Norby and Joseph Mitchell responded to Troup's call. Upon arriving at the Family Dollar, Officer Norby found Troup "crying and kind of distraught." Tr. p. 25. Troup indicated that she had been assaulted by Peppers and complained of pain. Officer Norby observed "slight red markings on her cheek." Tr. p. 25. Officers Mitchell and Norby then drove to Peppers's home and placed him under arrest.

[8] On August 7, 2014, Appellee-Plaintiff the State of Indiana ("the State") charged Peppers with one count of Class A misdemeanor domestic battery and one count of Class B misdemeanor battery. The case proceeded to a jury trial on September 14, 2016, after which Peppers was found guilty as charged. At sentencing, the trial court merged the Class B misdemeanor battery conviction into the Class A misdemeanor domestic battery conviction and sentenced

Peppers to a suspended term of 365 days and six months on probation. This appeal follows.

# Discussion and Decision

Peppers contends that the trial court abused its discretion in instructing the jury. Specifically, Peppers argues that the trial court should not have instructed the jury as to certain statutory factors which the jury could consider in determining whether Peppers and Troup were "living as if spouses." In making this argument, Peppers asserts that the instruction setting forth these statutory factors unduly emphasized certain evidence.

> The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for abuse of discretion. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999), *cert. denied*, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). To constitute an abuse of discretion, the instruction given must be erroneous, and the instruction taken as a whole must misstate the law or otherwise mislead the jury. *Id*. When determining whether a trial court erroneously gave or refused to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given. *Fields v. State*, 679 N.E.2d 1315, 1322 (Ind. 1997).

*Mayes v. State*, 744 N.E.2d 390, 394 (Ind. 2001).

There is no question in this case that the tendered jury instruction correctly stated the law in effect at the time Peppers committed the alleged domestic

battery. The version of the domestic battery statute that was in effect on the date in question provided as follows:

> (a) A person who knowingly or intentionally touches an individual who:
>> (1) is or was a spouse of the other person;
>> (2) is or was living as if a spouse of the other person as provided in subsection (c); or
>> (3) has a child in common with the other person;
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.
>
> * * * *
>
> (c) In considering whether a person is or was living as a spouse of another individual for purposes of subsection (a)(2), the court shall review:
>> (1) the duration of the relationship;
>> (2) the frequency of contact;
>> (3) the financial interdependence;
>> (4) whether the two (2) individuals are raising children together;
>> (5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
>> (6) other factors the court considers relevant.

Ind. Code § 35-42-2-1.3.

[12] The trial court's final jury instruction mirrored the language of Indiana Code section 35-42-2-1.3(c), reading as follows:

> In determining whether Anastazia Troup was living as the spouse of the defendant at the time the incident is alleged to have occurred, you may consider factors such as:

1.  the duration of the relationship;
2.  the frequency of contact;
3.  the financial interdependence;
4.  whether the two (2) individuals were raising children together;
5.  whether the two (2) individuals had engaged in tasks directed toward maintaining a common household; and
6.  other factors the jury considers relevant.

Appellant's App. Vol. II, pp. 56-57. As the Indiana Supreme Court has held, "[i]t is of course the case that an instruction which tracks verbatim the language of a statute is presumptively correct." *Campbell v. State*, 19 N.E.3d 271, 277 (Ind. 2014).

[13] In addition, the language of the trial court's tendered instruction followed the language set forth in Indiana Pattern Jury Instruction 3.19. "The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judges Association in conjunction with the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although they are not formally approved for use, they are tacitly recognized by Indiana Trial Rule 51(E)." *Id.* at 275 n.3 (citing *Halliburton v. State*, 1 N.E.3d 670, 684 n.9 (Ind. 2013)). This court has previously observed that the preferred practice is to use the pattern jury instructions. *See R.T. v. State*, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006), *trans. denied*.

[14] Peppers does not dispute that the tendered jury instruction mirrored Indiana's Pattern Jury Instruction 3.19, was a correct statement of the law, or was not covered by other instructions. Nor does he claim that the evidence presented

during trial did not support the giving of the instruction. In challenging the giving of the instruction, Peppers instead claims that the tendered instruction unduly emphasized certain evidence in violation of *Ludy v. State*, which indicated that "[i]nstructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." 784 N.E.2d 459, 461 (Ind. 2003).

[15] Upon review, however, we agree with the State's position that the tendered instruction did not emphasize a specific piece of evidence or invade the jury's province to consider all of the evidence. One of the elements of the Class A misdemeanor charge alleged that on August 2, 2014, Troup was living as if she were Peppers's spouse. Thus, in order to determine whether Peppers was guilty of the charged offense, the jury was required to make a determination as to whether Troup was living as his spouse. The trial court's tendered instruction instructed the jury to not only consider the statutory factors approved by the Indiana General Assembly for making such a determination but also any other evidence that the jury "consider[ed] relevant." Appellant's App. Vol. II, p. 57. The tendered instruction did not emphasize any one evidentiary fact. Rather it informed the jury as to what type of information could be considered in order to determine whether Troup was living as Peppers's spouse at the time the alleged battery occurred.

[16] Because the tendered jury instruction (1) informed the jury as to what type of general information could be considered in determining whether the State proved all elements of the charged offense; (2) was a correct statement of the

law which mirrored both the applicable statute in effect at the time and the relevant Pattern Jury Instruction; (3) was not covered by other instructions; and (4) was supported by the evidence presented during trial, we conclude that the trial court did not abuse its discretion in giving the tendered instruction to the jury. Accordingly, we affirm the judgment of the trial court.

[17] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.