

IN THE

# Court of Appeals of Indiana

Stacey Fuller,

*Appellant-Defendant*



FILED

May 16 2025, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 16, 2025

Court of Appeals Case No.
24A-CR-2111

Appeal from the Marion Superior Court

The Honorable Charles F. Miller, Judge

Trial Court Cause No.
49D29-2208-MR-21407

---

**Opinion by Judge Tavitas**
Chief Judge Altice and Judge Brown concur.

**Tavitas, Judge.**

## Case Summary

[1] Following a jury trial, Stacey Fuller appeals his convictions for attempted robbery resulting in bodily injury, a Level 3 felony, and murder, a felony. Fuller argues that insufficient evidence supports the robbery conviction and that the State presented insufficient evidence to disprove his claim of self-defense regarding the murder conviction. We disagree and, accordingly, affirm.[1]

## Issues

[2] Fuller raises two issues, which we restate as:[2]

     I.     Whether sufficient evidence supports Fuller's conviction for attempted robbery.

     II.    Whether the State disproved Fuller's self-defense claim.

## Facts

[3] On the night of August 4, 2022, Tonya Turner was parked in her driveway in her white Mitsubishi SUV preparing to take her family to the state fair. A red vehicle with several individuals inside pulled up behind her, blocking her in,

---

[1] In a companion case issued simultaneously with this opinion, we also review the appeal of Fuller's co-defendant, Jashon Wallace-Carswell, in Case No. 24A-CR-2104, and we affirm Wallace-Carswell's convictions.

[2] Fuller also argued in his initial brief that the State presented insufficient evidence that he committed resisting law enforcement. As Fuller concedes in his Reply Brief, however, this charge was dismissed before trial, and Fuller was not convicted of it. We, therefore, do not address this issue.

and a "lighter-skinned black male" armed with a handgun approached her driver's side window. Tr. Vol. II p. 193. Another man stood on the passenger side of Turner's vehicle. The man by the driver's side window pointed the gun at Turner and demanded that she surrender the SUV. Turner did so, and the man drove off in the SUV with the red vehicle following behind. Turner had left two firearms in the SUV, including a Glock 45.

[4] Turner reported the robbery to law enforcement, who located the SUV unoccupied at around noon the next day, August 5, 2022. Law enforcement placed a tracking device underneath the SUV to surveil its activity and ascertain the identities of the robbers. The SUV began moving at around 10:00 p.m. that night, and law enforcement covertly followed behind it.

[5] Later that night, James Dixon III, who owned a funeral home near the intersection of Lafayette Road and North Belleview Place in Indianapolis, was riding his motorcycle while speaking to his employee, Mysha Ford-Page, through a Bluetooth device in his helmet. Sometime after 1:00 a.m., Dixon drove the motorcycle to the funeral home to escape the rain. Still on the phone with Ford-Page, Dixon mentioned that he saw strangers approaching him. Ford-Page then heard over the phone a male demand Dixon's wallet. Dixon stated that he did not have a wallet, and Ford-Page then heard several gunshots.

[6] Around this time, FBI Agent Leonard Rothermich, who was assisting in the surveillance of the SUV, had been following the SUV along Lafayette Road. As Agent Rothermich turned south onto Belleview Place at the intersection, he

could see the funeral home in front of him with the white SUV parked partly on the driveway. The lighting was "surprisingly good" due to the presence of a light underneath an overhang covering the funeral home's front entrance. Tr. Vol. III p. 23. Agent Rothermich saw a motorcycle and Dixon between Fuller and Wallace-Carswell, who were each wearing dark clothing with their hoods up. The two "had their arms fully extended, pointed towards" Dixon in "close proximity[,]" although Agent Rothermich could not see if they were holding anything in their hands. *Id*. at 24. Agent Rothermich could hear "voices starting to raise" and "yelling." *Id*. at 26. Agent Rothermich looked down to grab his bullet-proof vest and, when he looked back up, he heard gunshots and saw "muzzle flashes" coming from the extended arms of the two individuals. *Id*. The individuals, who were still firing at Dixon, walked backward to the SUV and fled in the SUV.

[7] Indianapolis Metropolitan Police Department Sergeant Christopher Cavanaugh was also participating in surveillance of the SUV that night. From the intersection of Lafayette Road and Belleview Place, he heard gunshots and turned to see Fuller and Wallace-Carswell firing toward Dixon and retreating toward the SUV.

[8] Dixon was ultimately hit by two bullets, once in the knee and once in the shoulder at a downward angle. The shoulder injury was fatal. A subsequent investigation determined that both Fuller and Wallace-Carswell fired their weapons, although only bullets fired by Fuller struck Dixon. An undischarged firearm was found beside Dixon's body.

[9] After Fuller and Wallace-Carswell fled in the SUV, law enforcement executed a "takedown" of the SUV a short distance away by blocking it from the front and back with police cruisers. *Id*. at 165. Fuller fled from the driver's seat, fired at the officers, and attempted to throw away a firearm, but he was quickly apprehended and arrested. Wallace-Carswell was also arrested at the scene.

[10] On August 6, 2022, Taylor identified Fuller in a photographic lineup as the armed man who had been on the driver's side of the SUV during the robbery of the vehicle two days earlier. She was unable to identify the other individuals involved in the robbery.

[11] On August 10, 2022, the State charged Fuller with: Count I, murder, a felony; Count II, felony murder, a felony; Count III, attempted robbery resulting in serious bodily injury, a Level 2 felony; Count IV, armed robbery, a Level 3 felony; Count V, armed robbery, a Level 3 felony; Count VI, criminal recklessness, a Level 5 felony; and Count VII, resisting law enforcement, a Class A misdemeanor.[3] Count III was based on the attempted robbery of Dixon, Count IV was based on the robbery of Turner, and Count VI was based on Fuller shooting at officers during the takedown of the SUV. Counts V and VII were dismissed before trial.

---

[3] Wallace-Carswell was charged with murder, a felony; felony murder, a felony; and attempted robbery resulting in serious bodily injury, a Level 2 felony. Wallace-Carswell was not charged for the robbery of Turner.

[12] Fuller and Wallace-Carswell were tried together before a jury in June 2024. Fuller testified in his own defense and claimed that he borrowed the SUV from a friend. He further claimed that he and Wallace-Carswell were attempting to purchase drugs made from embalming fluid from Dixon, and the two shot at Dixon in self-defense after Dixon pulled out a firearm. Wallace-Carswell did not testify. The jury found both defendants guilty as charged.

[13] The trial court entered judgments of conviction on the jury's verdicts but, based on double jeopardy principles: (1) vacated the conviction for Count II, felony murder, in light of the jury's finding of guilt on Count I, murder; and (2) reduced Count III from Level 2 felony attempted armed robbery resulting in serious bodily injury to Level 3 felony attempted robbery by putting a person in fear. The trial court sentenced Fuller to consecutive sentences of fifty-five years for murder, nine years for the attempted robbery of Dixon, nine years for the robbery of Turner, and three years for criminal recklessness, for a total sentence of seventy-six years in the Department of Correction.[4] Fuller now appeals.

## Discussion and Decision

### I. Sufficiency of Evidence

[14] Fuller first argues that insufficient evidence supports his conviction for attempted robbery of Dixon in Count III. Sufficiency of the evidence claims

---

[4] As with Fuller, the trial court vacated Wallace-Carswell's conviction for felony murder and reduced the attempted robbery conviction to a Level 3 felony. The trial court sentenced Wallace-Carswell to a total sentence of sixty-six years in the Department of Correction for the murder and attempted robbery.

warrant a deferential standard of review in which we "neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). A conviction is supported by sufficient evidence if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In conducting this review, we consider only the evidence that supports the jury's determination, not evidence that might undermine it. *Id.* We affirm the conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[15] Fuller was convicted of attempted robbery by placing a person in fear, a Level 3 felony, under Indiana Code Section 35-42-5-1(a), which provides, in relevant part:

> [A] person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> * * * * *
>
> (2) by putting any person in fear;

commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant.

[16] We conclude the evidence was sufficient to support Fuller's attempted robbery conviction. Ford-Page testified that she was on the phone with Dixon that night; she heard one of the men who approached Dixon demand his wallet and heard Dixon refuse. She then heard several gunshots. Meanwhile, Agent Rothermich was observing the exchange nearby from the vehicle. He could see Fuller and Wallace-Carswell with their arms extended toward Dixon and, seconds later, the two men shot at Dixon. Sergeant Cavanaugh also saw the two men shooting at Dixon. Dixon died from gunshot wounds inflicted by Fuller.

[17] Fuller argues that it is unclear whether he or Wallace-Carswell demanded Dixon's wallet, but that is immaterial because they both participated in the robbery. *See* Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]"); *e.g.*, *Dean v. State*, 222 N.E.3d 976, 988 (Ind. Ct. App. 2023) (affirming conviction for robbery where defendant helped plan robbery but was not on the scene when robbery itself occurred), *trans. denied*. Fuller also argues that Agent Rothermich's and Sergeant Cavanaugh's views were distorted by the darkness and rain. This is merely a request that we reweigh the evidence, which we cannot do. Sufficient evidence supports Fuller's attempted robbery conviction.

## II. Self-Defense

[18] Fuller next argues that the State failed to disprove his claim of self-defense regarding Dixon's murder. He argues that he was justified in using self-defense because Dixon pulled out a gun. We conclude that the State presented sufficient evidence to demonstrate that Fuller's use of force in self-defense was not justified.

[19] "Self-defense is a legal justification for an otherwise criminal act." *Stewart v. State*, 167 N.E.3d 367, 376 (Ind. Ct. App. 2021) (citing *Gammons v. State*, 148 N.E.3d 301, 304 (Ind. 2020)), *trans. denied.* The State bears the burden of disproving the defendant's self-defense claim, either "by affirmatively showing the defendant did not act in self-defense—or by simply relying on the sufficiency of its evidence in chief." *Id.* (citing *Miller v. State*, 720 N.E.2d 696 (Ind. 1999)). "If a defendant is convicted despite his claim of self-defense, an appellate court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Id.* (citing *Wilson v. State*, 770 N.E.2d 799, 800-01 (Ind. 2002)).

[20] The self-defense statute, Indiana Code Section 35-41-3-2, provides in relevant part:

> (c) A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
>> (1) is justified in using deadly force; and

> (2) does not have a duty to retreat;

> > if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.

But self-defense is limited by Indiana Code Section 35-41-3-2(g)(1), which provides: "[A] person is not justified in using force if the person . . . is committing, or is escaping after the commission of, a crime." Our Supreme Court has clarified that:

> [B]ecause a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation.

*Mayes v. State*, 744 N.E.2d 390, 394 (Ind. 2001)*; see also Gammons v. State*, 148 N.E.3d 301, 304-05 (Ind. 2020)). Ultimately, it is the fact-finder that determines whether there is an immediate causal connection between the defendant's crime and the confrontation resulting in the injury to the victim. *Mayes*, 744 N.E.2d at 390.

Here, the jury was instructed that Fuller was not justified in using force in self-defense if he was "committing" or "escaping after" the commission of "a crime and there is an immediate causal connection between the crime and the confrontation." Appellant's App. Vol. II p. 233. The jury rejected Fuller's self-defense claim, and the evidence supports this determination. Fuller was

attempting to rob Dixon of his wallet at gunpoint when Fuller's asserted need for self-defense arose. Fuller and Wallace-Carswell approached Dixon outside the funeral home, and one of them demanded that Dixon surrender his wallet. Fuller and Wallace-Carswell had their firearms pointed at Dixon. It is not clear from the record whether and, if so, when Dixon drew his firearm; an undischarged firearm was merely found beside him after the shooting. But even if Dixon did draw his weapon, the confrontation was created by Fuller and Wallace-Carswell's attempt to rob him. Thus, there was "'an immediate causal connection between the crime and the confrontation.'" *Gammons*, 148 N.E.3d at 305 (quoting *Mayes*, 744 N.E.2d at 394).

[23] The State presented sufficient evidence for the jury to find beyond a reasonable doubt that, based on the commission of the attempted robbery, Fuller's use of force was "not justified[.]" [5] Ind. Code § 35-41-3-2(g)(1); *see Sage v. State*, 929 114 N.E.3d 923, 929 (Ind. Ct. App. 2018) (finding that defendant's use of force in self-defense was not justified because the defendant's act of dealing methamphetamine created the confrontation in which the need for the alleged self-defense arose).

---

[5] Fuller argues that he reasonably feared Dixon would shoot him. But even if that was the case, Fuller's attempted robbery created the confrontation and, thus, his use of force was not justified.

## Conclusion

Sufficient evidence supports Fuller's conviction for Level 3 felony attempted robbery. And Fuller's use of force was not justified as self-defense because the confrontation with Dixon was caused by Fuller's attempt to rob him. Accordingly, we affirm.

Affirmed.

Altice, C.J., and Brown, J., concur.

ATTORNEYS FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jennifer Anwarzai
Deputy Attorney General
Indianapolis, Indiana