## 10455

### STATE v. LEAKS.

#### (103 S. E. 549.)

1. CRIMINAL LAW—CHARGE CONSIDERED AS A WHOLE HELD NOT TO LIMIT SELF-DEFENSE TO A CASE OF ABSOLUTE NECESSITY.—Considering as a whole the charge of self-defense, *held* it could not be reasonably supposed that the jury was misled by portion of it to consider right to plea of self-defense, limited to a case where there was absolutely no other safe way of escape.

2. HOMICIDE—RIGHT OF SELF-DEFENSE NOT DESTROYED ON THE GROUND OF PROVOKING THE DIFFICULTY, BECAUSE THE PARTIES WERE GAMBLING TOGETHER.—Defendant is not deprived of the right of self-defense on the theory of provoking the difficulty, because he was at the time engaged in gambling with deceased, and deceased became provoked and attacked him on account of his winning his money.

Before PEURIFOY, J., Greenville, August term, 1919. Reversed.

Henry Leaks indicted for murder. From verdict of guilty, defendant appeals.

18—S. C. 114

*Messrs. David W. Smoak* and *Cothran, Dean & Cothran,* for appellant, cite: *An intentional killing may be committed without technical malice, and it is then voluntary manslaughter and not murder:* 72 S. C. 74; 21 Cyc. 736; 65 S. C. 213. *As a general rule, in order to justify or excuse a homicide, as in self-defense, defandant must have embraced all reasonable or probable means of escape or retreat within his power and consistent with his safety, so as to avoid th. danger and avert the necessity of killing:* 21 Cyc. 820; 55 S. C. 36; 40 S. C. 331; 40 S. C. 349; 43 S. C. 205; 110 S. C. 286; 103 S. C. 316. *Gambling, while unlawful, is not reasonably calculoted to bring on a difficulty:* 21 Cyc. 806.

*Mr. J. Robt. Martin, Solicitor,* for the respondent, cites: *Malice:* 39 S. C. 106; 68 S. C. 312; 72 S. C. 40. *Express malice:* 88 S. C. 130. *As to meaning of "Any other way to escape" in the Judge's charge:* 85 S. C. 67; 71 S. C. 145: 55 S. C. 36; 38 S. C. 224. *As to competency of testimony of the witness, Louis Brown:* 100 S. C. 334; 89 S. C. 48 57 S. C. 13.

June 28, 1920.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted for the murder of Herbert Smith; the jury rendered a verdict of guilty, and the sentence of death by electrocution was imposed on him, whereupon he appealed.

Lewis Brown, a witness for the State, thus testified as to the circumstances surrounding the homicide:

"We were all gambling with cards. Henry Leaks, Herbert Smith, Arthur Williams, and I were in the crowd. We had been playing from 11 o'clock until between 4 and 5 in the morning. Herbert Smith drew a card and turned it down. The defendant claimed to have won Herbert Smith's

money, the latter denied it, saying another of the players had won it. Defendant demanded the money. Deceased refused to give it to him.

"Stand up and show how he got the money. A. He reached and got the money with this hand like this. He brought it into this hand and carried it to his pocket. Q. And what did Henry do then? A. He pulled out his pistol. Q. Where was his pistol? A. In his bosom."

Arthur Williams, another witness for the State, testified as follows:

"Deceased drew a card, and he claimed the money. Deceased would not give it up. Defendant reached after the money, and deceased grabbed it up and started to put it in his pocket. Just as he started back with the money defendant pulled out his pistol and shot twice. I could not see what deceased had in his right hand. I saw defendant when he snatched the pistol out of his bosom. Q. Before he shot him did he catch hold of him? A. Yes, sir; they had hold of one another. Q. Did you ever see any pistol in this dead man's hand? A. No, sir; I heard him speaking of it. Q. This is, all night. What about pawning it? A. Yes, sir; he tried to pawn it to me. I didn't see it. He asked me to give him $10. I asked him what kind it was. He said 32 automatic. The shooting took place very quickly after they began to scuffle. I heard no words pass except the defendant said, 'Give me my money.' Q. Then, as I understood you awhile ago, the dead man reached to his hip pocket? A. I couldn't say whether he put his hand in his hip pocket or not, but he carried his hand back. Deceased grabbed the money first, and pulled it to him. Defendant reached after it, and deceased snatched it. I could not say whether he put his hand in his hip pocket or not, but he carried his hand back towards his hip pocket. They had hold of each other at the time. Deceased started to his hip pocket, and defendant snatched out his pistol. Defendant

snatched the pistol out as deceased started his hand. Deceased made the attempt first." Cross-examination: "Deceased was a big negro, very powerful; made threats about pistol; said two or three times he had a pistol. He was losing, and I reckon trying to scare somebody; had been pretty fretful all night; the more money he lost the meaner he got. He lost the last bet; defendant won it."

The first exception that will be considered is as follows: "His Honor, the presiding Judge, erred in charging the jury as follows, in defining the plea of self-defense: 'There must be no other safe way of escape.' 'A man has no right under those circumstances to take human life if there is any safe way to avoid it.' 'It becomes a question for the jury under all the circumstances that you heard proven whether or not there was any safe way for the defendant to have avoided taking the life of the deceased. If there was, the law imposes upon him that obligation.'

"Specification: The defendant is entitled to such plea where there is no other reasonably safe or adequate means of escape from the necessity of taking life, not any way of escape."

His Honor, the presiding Judge, charged the jury also as follows:

"Now, every person when assaulted has the right to defend himself, provided he is without fault in bringing on the difficulty, if he believes it necessary for him to take the life of his assailant to save himself from death or serious bodily harm, and if a person of ordinary reason and courage would believe the same thing placed as the defendant was placed, and if there was no other reasonably safe way to escape."

When the charge is considered in its entirety, it cannot be reasonably supposed that the jury was misled by that portion of it, quoted in the exception.

The next exception for consideration is as follows: "His Honor, the presiding Judge, erred in charging the jury that, if the defendant provoked a difficulty with the deceased by winning money at gambling, or on account of winning money from him at a game of chance, he was deprived of the right of self-defense.

"Specifications: The deceased was *in pari delicto* so far as the gambling was concerned; if he became provoked at the defendant, because the defendant had won his money, and attacked him on account thereof, the defendant, who had done nothing more to provoke a difficulty than to win the money of the deceased, could not for that reason alone be deprived of his right of self-defense. It cannot be declared as matter of law that to win money from another at gambling, though unlawful, is an act reasonably calculated to provoke a difficulty, such as to debar the right of self-defense."

His Honor, the presiding Judge, thus charged the jury:

"I charge you that in this case if you should find that the defendant at the bar, Henry Leaks, provoked—if he was gambling and if he provoked—the fight with any other person, on account of any money won by gaming, he would be violating the law, and the plea of self-defense would not be available to him. I repeat, if you should find in this case that the defendant at the bar provoked the difficulty, on account of money won in a game of chance, or in gambling, the plea of self-defense would not be available to him. On the other hand, I charge you that if the difficulty was provoked by the deceased, or if it was not provoked by the defendant, on account of the game of chance, why, then the plea of self-defense would be available to him, and, if it is proven to your satisfaction, as I shall charge you further, why you will give him the benefit of it. The law does not recognize the rights of gambling; on the contrary, gambling is unlawful in this State. * * * "

It cannot be successfully contended, when a fight takes place during a gambling game, between the participants, that such a result was naturally and probably to be anticipated from the mere fact that gambling is unlawful. The causal connection between the unlawful act of gambling and the encounter arising during the progress of the game between the participants is too remote to destroy the right of self-defense. Furthermore, if the ruling of his Honor, the presiding Judge, should be sustained, it would lead logically to the further untenable proposition that neither the assailant nor the party upon whom the assault was made would have the right to rely upon the plea of self-defense. The exception raising this question is sustained.

The sixth exception assigns the same error in the ruling of the Circuit Judge refusing the motion for a new trial, and that exception is also sustained. When the charge is considered in its entirety, it has not been made to appear that the other exceptions assign prejudicial error.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.