**Zachary GILLESPIE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A04–0411–CR–611.**

Court of Appeals of Indiana.

Aug. 19, 2005.

Alan K. Wilson, Public Defender, Muncie, for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Zachary Gillespie appeals his convictions of aggravated battery, a Class B felony,[1] and criminal recklessness resulting in bodily injury, a Class C felony.[2] He raises two issues, one of which we find dispositive: Whether the trial court erred in allowing evidence of Gillespie's prior bad acts pursuant to Ind. Evidence Rule 404(b).

We reverse.

## FACTS AND PROCEDURAL HISTORY

On December 23, 2003, Troy Littell was at his home with Casey Charnley, Nate Collins and Lesley Wright. Gillespie arrived at about 9:00 p.m., then left to see his girlfriend, Jordan Writtenhouse. Gillespie returned about an hour and a half later, drunk and angry. Aaron Meckem, who roomed with Littell, came home shortly thereafter. Meckem and Gillespie argued and pushed each other, and Littell ordered them out of the house. Gillespie and Meckem got into Gillespie's car. Littell followed them to the car and tried to hit Gillespie twice.

While in Gillespie's car, Meckem accused Gillespie of breaking into his house and stealing some property. An argument ensued, and Meckem "head butted" Gillespie. (Tr. at 588.) Gillespie threw a punch at Meckem as Meckem got out of the car. Gillespie drove home.

Meckem went back into the house and put on brass knuckles.[3] He said he "was going to hurt [Gillespie], and he was going to beat his ass, and he was done with him, and he was going to his house and he was going to finish it, and he was going to beat his ass." (*Id.* at 179.)

Meckem followed Gillespie to Gillespie's house. They got out of their respective vehicles, and Meckem started punching Gillespie while wearing the brass knuckles. Gillespie pulled out a Jeff Gordon pocket knife and started waving it in front of him. Meckem continued to throw punches at Gillespie. During the altercation Gillespie sustained injuries to his face, including bruises, a hole in the corner of his left eye and a broken nose. Meckem was cut several times and sustained a puncture wound to the heart. Meckem bled to death.

Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

The State filed a "Pre–Trial Notice of Intent to Introduce 404(b) Evidence." (App. at 28–29.) Evid. R. 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The State sought to admit the following evidence:

a. testimony regarding the consumption of beer and vodka by this defendant.

b. testimony regarding the use of marijuana by this defendant.

c. testimony regarding the possession of rolling papers by this defendant.

d. testimony regarding the toxicology report showing the presence of benzo-

---

**1.** Ind.Code § 35–42–2–1.5.

**2.** Ind.Code § 35–42–2–2(d)(1). Gillespie was found not guilty of voluntary manslaughter, a Class A felony. Ind.Code § 35–42–1–3(a)(1).

**3.** These brass knuckles had a knob protruding out from each of the knuckles. The knobs would be the first to impact a person who was hit with the brass knuckles.

diazepine, marijuana, and alcohol in the blood system by [sic] this defendant.

e. testimony regarding the victim Aaron Meckem accusing this defendant of breaking into Aaron Meckem's dad's house and stealing his guns.

f. testimony regarding this defendant wanting to fight Nathaniel Collins on 23 December, 2003.

g. Testimony regarding an argument earlier in the evening of 23 December, 2003 by Aaron Meckem and this defendant that resulted in Aaron Meckem head butting this defendant in the face and this defendant punching Aaron Meckem in the head.

h. Testimony regarding this defendant stating that if Jordan Writtenhouse's step dad was home he was going to cut her step dad's throat.

\* \* \* \* \* \*

None of this evidence will be offered to prove "action in conformity therewith" as defined in I.R.E. 404(b). Rather, said extrinsic act evidence will be offered to show intent, preparation, knowledge, common scheme or plan, identity, and absence of mistake or accident.

(App. at 28–29.)

Gillespie did not object to the evidence of Meckem's allegations that Gillespie stole guns from the home of Meckem's father and of the altercation between Meckem and Gillespie in Gillespie's car. However, he objected to all the other evidence. The trial court overruled Gillespie's objections.

---

4. The State asserts Gillespie's challenge to certain evidence, such as this exchange, is waived because of Gillespie's "failure to make a contemporaneous objection" or because Gillespie objected on relevance grounds and "raised his Rule 404(b) claim only upon appeal." (Br. of Appellee at 6.)

Gillespie objected before trial to most of the character evidence the State proposed to offer pursuant to Rule 404(b), and objected to prior

At trial, the following evidence was introduced over Gillespie's objections:

Q. You mentioned that [Gillespie] was mad. How could you tell that he was mad?

A. Oh, when he first walked into my house, he kind of ripped his shirt off and went straight at my friend, Nate, and, uh, told Nate he was going to kick his ass because of something Nate supposedly sad [sic] to Jordan's step-dad.

(Tr. at 108.)

Q. Okay. Now do you recall the exact words that he said to Nat [sic]?

A. He said, uh, something like "you said something to Jordan's step-dad and you need to keep your fuckin mouth shut or I'm going to beat your ass" or something in that order.

\* \* \* \* \* \*

██ Q. [W]hat did the defendant do next?

A. I was kind of trying to calm him down and he was still kind of belligerent and still mad and walking around huffing and puffing. And I started playing around with him, you know, messing around with him, and he stepped back and he pulled this pocket knife out on me. And I don't know if he was actually going to use it on me or if he was just joking around. But he did pull it out on me.

(*Id.* at 109–10.) [4]

Q. When [Gillespie] walked up on you, where were his hands?

questions in the direct examination excerpted above. (*See, e.g.*, Tr. at 108):

[Defense Counsel]: Your Honor, I'll object to this. This has nothing to do with the incident in question, which happened hours later. Any threats he made to anybody else simply are evidence of other offenses not charged. They're not relevant and shouldn't be admissible.

The Court: Objection noted and overruled.

A. They were like this at his side.

Q. Okay. Were his fists clenched or unclenched?

A. Yeah.

Q. They were clenched?

A. Yeah.

(*Id.* at 133–34.)

Q. Okay. What happens next?

A. Really we just sat around and talked. You know he's nice for a little bit and then he got mad because, uh, Aaron came in and they lost a joint.

(*Id.* at 135.)

Q. Okay. Was [Gillespie] drunk on that night?

A. He was—— I don't know if he was drunk but I mean, he had been drinking.

Q. Okay. Did he have anything else?

After the next exchange, defense counsel stated "May I have a continuing objection"? and the court responded "Objection noted, it will be a continuing objection, and is overruled." (*Id.* at 109.)

Evid. R. 404(b) prevents the State from punishing people for their character, evidence of extrinsic offenses poses the danger the jury will find the defendant guilty because his character is bad or he has a tendency to commit other crimes. *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003). Thus, in assessing the admissibility of evidence under Rule 404(b), the trial court must first determine whether the evidence of other crimes, wrongs, or acts is *relevant to a matter at issue other than the defendant's propensity to commit the charged act* and must then balance the probative value of the evidence against its prejudicial effect pursuant to Evid. R. 403. *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind. Ct.App.2005). To determine whether the trial court abused its discretion, we employ the same test. *Id.*

As explained above, Gillespie objected before trial on Rule 404(b) grounds and objected at trial on the grounds the testimony was

A. He had the marijuana, I mean.

(*Id.* at 145.)

Q. Okay. Now when [Gillespie] came in that night to Troy's, did he say anything?

A. Yeah, he was talking about he, they were going to go smoke and that he needed, they were talking about they wanted some pills and . . .

\* \* \* \* \* \*

Q. Did the defendant say he wanted a specific type of pill?

A. Yeah, Xanax.[5]

(*Id.* at 161.)

Q. Okay. Did you see him do anything else that night?

\* \* \* \* \* \*

A. When Aaron, when Aaron was there, they were going to roll a joint and somehow it got lost.

(*Id.* at 164–65.)

Q. Okay. What does he say to you?

"evidence of other offenses not charged" (Tr. at 108) and was irrelevant. We must accordingly decline the State's apparent invitation to eliminate, for the first time, the relevance determination from our Rule 404(b) analysis and to hold Gillespie waived his Rule 404(b) claim by objecting on "new grounds," (Br. of Appellee at 6), *i.e.*, relevance and "other offenses not charged."

**5.** The State refers throughout its brief to "Xanex," *e.g.*, "the drug Xanex" (Br. of Appellee at 2), "benzodiazepine (the generic name for Xanex)" (*id.* at 4), and "prescription pills, specifically Xanex" (*id.* at 7). As best we can determine, there is no drug "Xanex." These references are presumably to Xanax, a member of "a class of drugs called benzodiazepines. Controlled clinical trials have demonstrated that XANAX is effective in the treatment of Generalized Anxiety Disorder, anxiety associated with depression, and Panic Disorder with or without agoraphobia." *at* http://www.xanax.com/content.asp?id=4 & sid=3 (last visited July 22, 2005).

A. He, he had came in the door and he had asked me, uh, if this, if I was breaking up with him because of my step-dad. And I told him no. And........

 \* \* \* \* \* \*

A. And I had said no, leave him out of this.

Q. And what did he say?

A. And he said well if its because of your step-dad, I'll go around the corner and slice his throat.

(*Id.* at 379–80.)

Gillespie argues this evidence was not of "extrinsic acts" admissible under R. 404(b), nor "intrinsic acts" that are admissible because they are inextricably intertwined with the offense itself.

■ The rationale underlying Evid. R. 404(b) is that the jury is precluded from making the "forbidden inference" that the defendant has a criminal propensity and therefore engaged in the charged conduct. *Holden v. State*, 815 N.E.2d 1049, 1054 (Ind.Ct.App.2004), *trans. denied.* In deciding whether the challenged evidence is admissible, we: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evid. R 403. *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind.2000); *Holden*, 815 N.E.2d at 1054. In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Evid. R. 403, it is admissible. *Roop*, 730 N.E.2d at 1270.

■ The State asserts on appeal it sought to admit the evidence of Gillespie's prior acts to prove Gillespie's "state of

mind *at the time of the fight* [.]" [6] (Br. of Appellee at 8.) (*And see id.* at 7) ("The State asserts that in order to rebut Defendant's claim of self-defense, it could put forth evidence indicating Defendant's state of mind."). However, that evidence was irrelevant to whether Gillespie was acting in self-defense and therefore should not have been admitted.

Under the provisions of Ind.Code § 35–41–3–2 applicable to the case before us, a person is justified in using reasonable force to protect himself from what he *reasonably believes to be the imminent use of unlawful force* by another person. A person is justified in using deadly force only if he *reasonably believes that force is necessary to prevent serious bodily injury to* himself. *Id.* However, a person is not justified in using force if 1) he provokes unlawful action by another person with intent to cause bodily injury to the other person, or 2) has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

It therefore is apparent that the only statutory element of self-defense to which Gillespie's "state of mind" might be relevant is his "reasonable belief" *vel non* that he is being subjected to the imminent use of unlawful force and his "reasonable belief" *vel non* that his own use of force is necessary to prevent serious injury to himself. The other elements of self-defense, *i.e.*, whether someone is an "initial aggressor," or the provocateur, or has withdrawn from the encounter, are plainly objective matters that cannot be determined by ref-

---

**6.** That does not appear to accurately reflect the prosecution's argument in its motion to enter evidence under Evid. R. 404(b): "All of this goes to his state of mind on that night *on* the actions which lead later down the road to the victim being killed." (Tr. at 40) (emphasis supplied). As explained below, this is a critical distinction.

erence to the "state of mind" of the defendant asserting self-defense. *See, e.g., Brand v. State,* 766 N.E.2d 772, 779 (Ind. Ct.App.2002) ("Introduction of specific acts to prove the defendant's *state of mind* would support the proposition that the defendant *had a reasonable belief* that deadly force was necessary.") (emphasis supplied), *reh'g denied, trans. denied* 783 N.E.2d 698 (Ind.2002). *And see Brown v. State,* 738 N.E.2d 271, 275 (Ind.2000) (approving a jury instruction that "The question of the existence of an apparent danger and the amount of force necessary to resist force, can only be determined *from the standpoint of the defendant, at the time and under the then existing circumstances.*") (Emphasis supplied). The *Brown* court found this instruction "especially fair in emphasizing the aspects of self-defense concerning Defendant's state of mind." *Id.*

By contrast, the evidence the State offers in the case before us—actions that involved other people and did not occur during the altercation with Meckem, and allegations Gillespie used marijuana and asked for a prescription drug earlier that evening, accordingly could not have been relevant to Gillespie's "state of mind" *vis-à-vis* the existence of danger and the amount of force necessary to resist it "at the time" he was facing Meckem and "under the then existing circumstances." [7]

The testimony Gillespie challenges on appeal has no apparent relevance to whether Gillespie believed he was being subjected to the imminent use of unlawful force during the altercation with Meckem or that his own use of force was necessary to prevent serious injury to himself. Nor does it have any apparent relevance to the reasonableness of those beliefs.[8] His anger, drug and alcohol use, and threats against other people are irrelevant to what later occurred with Meckem, and Gillespie's objections to all of this evidence should have been sustained.

Our supreme court has warned:

In its effort to prove guilt, the State may not "flood the courtroom" with unnecessary and prejudicial details of prior criminal conduct merely because some of that evidence is relevant and admissible. Rule 404(b) is on the books because evidence of prior crimes is presumptively prejudicial. Even where a prior criminal act is relevant to a material fact, the potential for unfair prejudice dictates that the evidence of the prior misconduct be limited to that necessary to prove the disputed fact.

*Thompson v. State,* 690 N.E.2d 224, 236 (Ind., 1997) (*quoting* United States v. Smith, 80 F.3d 1188, 1193 (7th Cir.1996)).

 We believe the State "flooded the courtroom" with "unnecessary and prejudicial details" of Gillespie's actions prior to his altercation with Meckem. *See id.* That evidence was irrelevant to whether Gillespie was defending himself

---

7. Nor did the charges against Gillespie relate to any acts other than his altercation with Meckem, specifically any "threats" made by Gillespie against Collins or Writtenhouse's stepfather.

8. We note that even if Gillespie had earlier that day been angry and threatened other people, the record reflects he left the scene after his first altercation with Meckem. Even viewing the evidence most favorably to the verdict, there was no evidence Gillespie was the aggressor in the altercation that led to Meckem's unfortunate death. Travis Gillespie, Gillespie's brother, witnessed the incident. He testified Meckem left his vehicle, ran up to Gillespie, and hit him in the face. After Meckem hit Gillespie in the face three or four times, Gillespie either pushed or stepped back and pulled out his pocket knife. Meckem continued to swing at Gillespie and Gillespie tried to keep him back. Travis never saw Gillespie move toward Meckem. Gillespie's own testimony at trial was to the same effect.

against Meckem, it was unduly prejudicial, and it did not allow Gillespie a fair trial. It could have had no effect but to lead the jury to make "the forbidden inference [Gillespie] has a criminal propensity and therefore engaged in the charged conduct." *Holden*, 815 N.E.2d at 1054. As a result, we must reverse Gillespie's convictions.[9]

SHARPNACK, J., and VAIDIK, J., concur.

9. Should the State choose to retry Gillespie with a case built only on relevant evidence against him, we note *sua sponte* that under the facts in the record before us Gillespie was apparently subjected to double jeopardy when he was convicted of both aggravated battery and criminal recklessness resulting in serious bodily injury.

Multiple convictions are prohibited when there is a reasonable possibility the evidentiary facts the jury used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Davis v. State*, 770 N.E.2d 319, 323 (Ind.2002), *reh'g denied.* This "actual evidence" test is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Id.* In applying the actual evidence test, we identify the essential elements of each offense and evaluate the evidence from the jury's perspective. *Scott v. State*, 771 N.E.2d 718, 730 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 699 (Ind.2002), *disapproved on other grounds by Louallen v. State*, 778 N.E.2d 794 (Ind. 2002). We consider the jury instructions where relevant, the arguments of counsel, and other factors that might have guided the jury's determination. *Id.*

"A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes ... serious permanent disfigurement [or] protracted loss or impairment of the function of a bodily member or organ" commits aggravated battery, a Class B felony. Ind.Code § 35–42–2–1.5. "A person who recklessly, knowingly, or intentionally ... inflicts serious bodily injury on another person commits criminal recklessness ... the offense is a Class C felony if committed by means of a deadly weapon." Ind.Code § 35–42–2–2.

In closing argument the prosecutor reviewed the evidence at great length and discussed the significance of Gillespie's state of mind as it was relevant to his assertion of self-defense. But nothing in the State's closing argument addressed the elements of the various charges against Gillespie or suggested different facts might have been relevant to the elements that distinguished the various crimes with which Gillespie was charged. Gillespie's counsel, in closing argument, noted Gillespie had been charged with voluntary manslaughter and "two other offenses, either they're lesser included offenses or—basically they are ... [b]asically they're all the same thing." (Tr. at 684.) Nothing in the judge's charge to the jury after closing argument suggested the counts of criminal reckless and aggravated battery arose out of different incidents or were supported by different evidentiary facts related to the fight between Gillespie and Meckem.

Under the "actual evidence" test, therefore, Gillespie was subjected to double jeopardy when he was convicted of both criminal recklessness and aggravated battery.