

FILED

Nov 02 2023, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Samuel Dayton
Megan M. Smith
Nicole D. Wiggins
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marques D. Hardiman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 2, 2023

Court of Appeals Case No.
22A-CR-2993

Appeal from the Hendricks Circuit
Court

The Honorable Daniel F. Zielinski

Trial Court Cause No.
32C01-2105-MR-1

**Opinion by Judge Tavitas**
Judges Weissmann and Kenworthy concur.

**Tavitas, Judge.**

## Case Summary

Following a jury trial, Marques Hardiman was convicted of murder, a felony, and attempted robbery, a Level 5 felony. Hardiman appeals and claims that: (1) the trial court abused its discretion by admitting evidence of text messages exchanged between Hardiman and his accomplice regarding a previously planned robbery; and (2) the trial court abused its discretion in instructing the jury on the availability of the defense of self-defense. We disagree and, accordingly, affirm.

## Issues

Hardiman presents two issues for our review:

I. Whether the trial court abused its discretion by admitting evidence under Indiana Evidence Rule 404(b)—text messages exchanged between Hardiman and his accomplice regarding a previously planned robbery.

II. Whether the trial court abused its discretion in instructing the jury on the availability of the defense of self-defense, and, if so, whether it was harmless error.

## Facts

On May 2, 2021, then eighteen-year-old Hardiman sent a text message to his friend, Christian Edmon, in which he asked if Edmon could "front" him some marijuana, i.e., give Hardiman marijuana with a promise of payment later. Ex. Vol. V p. 102. Edmon told Hardiman that he could not do so and indicated that he needed to "re up," i.e., purchase additional marijuana himself. *Id*.

Hardiman then arranged to buy the drug from Emanuel Fonville the next day. Hardiman then sent Edmon a text message stating that he "gotta L on a QP,"[1] meaning that Hardiman had identified a potential victim from which he could rob a quarter pound of marijuana.[2] *Id.* When Edmon asked Hardiman for more details, Hardiman replied that the person who had the marijuana was "some black n\*\*ga on my snap,[3]" and that they planned to meet at 4:30 p.m. in Brownsburg. *Id*. at 104.

[4]  On the afternoon of May 3, 2021, Fonville and his girlfriend, Giovanna Hines, drove to a Kroger parking lot to meet Hardiman. A Chrysler pulled up next to Fonville's car. Hardiman exited the Chrysler and got in the back seat of Fonville's car. Hardiman asked to see the marijuana. Fonville showed him the marijuana and asked to see Hardiman's money. Hardiman then exited Fonville's car and returned to the Chrysler. Edmon, who had been driving the Chrysler, and Hardiman both exited the Chrysler; Edmon was wearing a ski mask. Hardiman and Edmon got into the back seat of Fonville's car; Hardiman sat behind Hines in the passenger side of the car, and Edmon sat behind Fonville on the driver's side. Hardiman asked if the marijuana was the agreed-to amount, and Fonville weighed the marijuana on a scale. When Fonville

---

[1] Unless otherwise indicated, we quote the text messages verbatim, including spelling and grammatical errors.

[2] Testimony at trial indicated that "L" referred to a "lick," meaning a robbery. Tr. Vol. IV p. 49. Brownsburg Police Captain Jennifer Barrett testified that "QP" refers to a quarter pound, i.e., four ounces. *Id*. at 141.

[3] "Snap" refers to the social media app Snapchat. *See* Tr. Vol. IV p. 50.

said, "it's all there," Hardiman grabbed the marijuana. Tr. Vol. II p. 192. Fonville also grabbed the marijuana, and the two struggled over control of the marijuana. As they struggled, Hardiman pulled out a handgun and shot Fonville in the chest.

[5] After Hardiman shot Fonville, Hardiman and Edmon exited Fonville's car, got back into the Chrysler, and drove away. Brooks Vossler, who happened to be eating his lunch in the Kroger parking lot at the time, heard the shooting and observed a Chrysler drive away from the scene. Vossler jotted down the license plate number of the Chrysler. Vossler then went to Fonville's aid. Hines dialed 911 and hid the marijuana in the trunk of Fonville's car. Fonville was transported by ambulance to the hospital, where he died as a result of the gunshot wound. The police found no guns or other weapons in Fonville's car. They did, however, find Fonville's marijuana, which Hines had hidden in the car.

[6] That same day of the shooting, Hardiman deleted his Snapchat account, and he either deleted or deactivated his other social media accounts. Later that evening, Edmon sent Hardiman a link to a news story about the shooting. Hardiman responded, "[d]amn." Ex. Vol. V p. 106. Hardiman in turn sent the link to his girlfriend. Hardiman also sent Edmon a link about a "first time doing a drill [i.e., a robbery] with your homie." Tr. Vol. IV p. 76. Hardiman disassembled the handgun and disposed of the pieces in various, different locations.

With the license plate number and the information provided by Hines, the police soon identified Hardiman as a suspect. On May 6, 2021, Brownsburg Police Department Captain Jennifer Barrett interviewed Hardiman. Hardiman admitted that he planned to buy marijuana from Fonville, but he claimed that Fonville reached for a gun and demanded money. Only then, Hardiman claimed, did he pull out his gun and shoot Fonville.

The State charged Hardiman with Count I, murder; Count II, felony murder; and Count III, attempted robbery resulting in serious bodily injury, a Level 2 felony. The State also alleged that Hardiman used a firearm during the commission of the murder.

A four-day jury trial commenced on October 25, 2022. At trial, the State offered into evidence State's Exhibit 73, which was a printout of text messages exchanged between Hardiman and Edmon on March 15, 2021. These messages indicate that Hardiman and Edmon had planned a robbery on March 15, 2021, which was similar to the plans the two made before robbing Fonville. Specifically, Hardiman sent a message to Edmon stating, "Gotta lick onna qp of some za[4] on dis n\*\*ga I jus added on snap he a white boy." Ex. Vol. V p. 88. Edmon asked if the person Hardiman was referring to had a "pipe," meaning a gun. *Id.* at 89. Hardiman stated, "Ion think so. . . . He don't post it." *Id.* at 90. After further discussion about the planned target, Edmon

---

[4] "Za" is a reference to marijuana. Tr. Vol. IV p. 67.

messaged Hardiman, "Think of a plan rn[5] though." *Id*. at 94. Hardiman later told Edmon, "When u up pipe imma hop out open the back door and pull em out . . . [a]nd take the gas.[6]" *Id*. at 95.

[10] Hardiman objected to the admission of these March 2021 messages, arguing that they were unduly prejudicial, were evidence of prior bad acts, and were inadmissible hearsay. The State argued that the messages were admissible as evidence of a contrary intent to rebut Hardiman's claim of self-defense and to show motive. The trial court overruled Hardiman's objections, concluding:

> The part I was concerned about is[,] for evidence of a crime,
> wrong or other act [to] be admissible[,] the court must decide if
> the evidence is relevant to a material fact, to a matter at issue
> other than the Defendant's propensity to commit the charged act.
> The principal risk of unfair prejudice presented by uncharged
> misconduct evidence [is] that the jury will infer that the
> Defendant was a bad man who should have been punished for
> his other uncharged misdeeds. That was the concern I had.
> Balancing everything out, [] I think the State has shown that it is
> offering this evidence for reasons other than the Defendant's
> propensity to commit the charged act. It's a very close call but
> when the law says basically again that the risk of unfair
> prejudice, confusion and waste of time must substantially
> outweigh the legitimate probative value. I don't think that's been
> met.

---

[5] "Rn" is an abbreviation for "right now." *See United States v. Spencer*, 2023 WL 5091827, at *4 (2d Cir. Aug. 9, 2023); *Munoz v. Superior Court*, 259 Cal. Rptr. 3d 247, 250 (2020) (both noting that "rn" is an abbreviation for "right now").

[6] "Gas" is also a reference to marijuana. Tr. Vol. II p. 201.

Tr. Vol. IV p. 62.  The trial court then admitted the March 2021 messages into evidence.

[11]    Before the case was submitted to the jury, Hardiman tendered an instruction on self-defense that provided in relevant part:

> A person is not justified in using force if:
>
>> (1) the person is committing a crime, and there is an immediate causal connection between the crime and the confrontation . . . .

Appellant's App. Vol. II p. 223.

[12]    The State's proposed self-defense instruction stated in relevant part:

> [A] person may not use force if:
>
> he is committing a crime that is directly and immediately connected to the confrontation[.]  In other words, for the defendant to lose the right of self-defense, the jury must find that, **but for** the Defendant's commission of a separate crime, the confrontation resulting in injury to Emmanuel Fonville would not have occurred . . . .

*Id*. at 216 (emphasis added).

[13]    The trial court's instruction on self-defense included language from both proposed instructions and provided in relevant part:

> [A] person may not use force if he is committing a crime and there is an immediate causal connection between the crime and the confrontation.  In other words, for the Defendant to lose the

> right of self-defense the jury must find that **but for** the
> Defendant's commission of a separate crime, the confrontation
> resulting in injury to Emanuel Fonville would not have occurred.
> . . .

Tr. Vol. IV p. 170 (emphases added). Hardiman objected to the trial court's instruction, which the trial court overruled.

[14] The jury found Hardiman guilty as charged and found that Hardiman used a firearm during the commission of the murder. On November 14, 2022, the trial court held a sentencing hearing at which it entered judgment of conviction on the count of murder but "vacate[d]" the felony murder conviction due to double jeopardy concerns. *Id*. at 244. The trial court also entered judgment of conviction on the attempted robbery count as a Level 5 felony. The trial court sentenced Hardiman to an executed term of fifty years on the murder conviction, which was enhanced by ten years for the use of a firearm, and a consecutive term of three years on the attempted robbery conviction. Hardiman now appeals.[7]

---

[7] On October 17, 2023, we held oral argument in this case at the Black Box Theater at Hammond Central High School in Hammond, Indiana. We extend our thanks to the faculty and staff of the school for their hospitality. We also thank the students from both Hammond Central High School and Hammond Morton High School who attended the oral argument for their thought-provoking questions after the argument. Lastly, we thank counsel for both parties for the quality of their arguments and for remaining after the argument to answer the students' questions.

## Discussion and Decision

### I. *Admission of Text Messages*

Hardiman first argues that the trial court abused its discretion by admitting into evidence the text messages he and Edmon exchanged on March 15, 2021, forty-nine days before the instant shooting. We review challenges to the admission of evidence for an abuse of the trial court's discretion. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021), *cert. denied*. We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). "The effect of an error on a party's substantial rights turns on the probable impact of the impermissible evidence upon the jury in light of all the other evidence at trial." *Gonzales v. State*, 929 N.E.2d 699, 702 (Ind. 2010).

On appeal, Hardiman claims that the March 2021 messages were inadmissible evidence of prior bad acts under Indiana Evidence Rule 404(b). This rule provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid. R. 404(b)(1). Such evidence may be admitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

Evidence Rule 404(b) is designed to prevent the jury from making the "forbidden inference" that prior wrongful conduct suggests present guilt.

*Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013). As our Supreme Court stated in *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003), the purpose behind Evidence Rule 404(b) is to "prevent[] the State from punishing people for their character, and evidence of extrinsic offenses poses the danger that the jury will convict the defendant because . . . he has a tendency to commit other crimes." (internal quotation omitted).

[18] "The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the forbidden inference of demonstrating the defendant's propensity to commit the charged crime." *Laird v. State*, 103 N.E.3d 1171, 1177 (Ind. Ct. App. 2018) (citing *Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008)), *trans. denied*. When evidence is introduced for another purpose—such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident—the trial court:

> First . . . must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act. Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. And third, the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

*D.R.C. v. State*, 908 N.E.2d 215, 223 (Ind. 2009) (citations and internal quotations omitted).

[19] Hardiman argues that, here, the State offered the text messages to prove the forbidden inference—that he had talked about a robbery previously and was,

therefore, more likely to have committed the robbery alleged here. The State argues that the messages were offered for another purpose, specifically, to rebut Hardiman's claim of self-defense and show his motive and intent. We agree with the State.

[20] Intent is always at issue in a criminal trial. *Fairbanks v. State*, 119 N.E.3d 564, 571 (Ind. 2019) (citing *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)). "To allow other-bad-acts evidence to prove intent when a defendant merely denies involvement in a crime would often produce the 'forbidden inference'—a result at odds with Rule 404(b)'s overarching purpose." *Id*. at 569 (citing *Wickizer*, 626 N.E.2d at 797, 799). Thus, "Rule 404(b)'s intent exception is available only 'when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent.'" *Id*. (quoting *Wickizer*, 626 N.E.2d at 799). The State must have "reliable assurance" that the defendant will affirmatively contest the issue of intent before the intent exception will apply. *Id*. (quoting *Wickizer*, 626 N.E.2d at 799). Accordingly, the intent exception "becomes available when a defendant's claim of contrary intent is alleged in the 'opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief.'" *Id*. (quoting *Wickizer*, 626 N.E.2d at 799).

[21] Here, Hardiman alleged a contrary intent—self-defense—in his opening statement. *See* Tr. Vol. II p. 138 ("This case is about self-defense. Marques Hardiman was acting in self-defense. And you will hear that he shot one time to defend himself."). A claim of self-defense is a claim of contrary intent. *Evans*

*v. State*, 727 N.E.2d 1072, 1080 (Ind. 2000); *Davis v. State*, 186 N.E.3d 1203, 1211 (Ind. Ct. App. 2022), *trans. denied*. When a defendant claims self-defense, the State may use the defendant's prior misconduct to disprove that the victim was the first aggressor. *Embry v. State*, 923 N.E.2d 1, 9 (Ind. Ct. App. 2010) (citing *Evans*, 727 N.E.2d at 1080).

[22]    The State did not introduce Hardiman's March 2021 messages to show that he was of poor character and was, therefore, more likely to have acted in accordance with his character on a particular occasion. Instead, the State introduced the messages to show that Hardiman had the intent to commit robbery when he met Fonville and did not act in self-defense.

[23]    In support of his argument, Hardiman claims that the prosecutor noted the similarity between the March 2021 planned robbery and the May 3, 2021 robbery during which Hardiman shot Fonville. The prosecuting attorney, however, stressed in the State's closing argument that the March 2021 messages were evidence of Hardiman's intent on the day of the robbery.[8]

---

[8] The relevant portions of the State's closing argument follow:

> So, let's talk about what the Defendant **intended**. What was his plan. The plan between Edmon and the Defendant, does this look familiar? We know what the Defendant was **intending** to do when he met with, a male on May 3 with Emanuel Fonville. On the May 3 text, or May 5, excuse me, March 15 text messages the Defendant writes this. [Prosecutor reads the March 2021 messages]. That statement was written by the Defendant. It's clear what his **intent** was on May 3. There was never going to be a sale of marijuana. [Prosecutor reads the May 2021 messages]. Look familiar? The language look familiar? [Prosecutor reads from the May 2021 messages]. Contained in those text messages is the plan, is the **intent** to rob Emanuel Fonville. That's the Defendant's **intent**. . . . March 15 text messages, May 3 actions. The Defendant's **intent** and plan was robbery.

Tr. Vol. IV pp. 180-81 (emphases added).

[24]     Hardiman also argues that, before the evidence of his prior text messages could be introduced under the intent exception to Evidence Rule 404(b), the State had to prove that Hardiman followed through with his plan to commit the prior robbery. In support of this argument, Hardiman cites *D.R.C.*, *supra*. As noted above, our Supreme Court in *D.R.C.* stated that, before a trial court may admit evidence of other bad acts for "other purposes," the court "must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act." *D.R.C.*, 908 N.E.2d at 223. Hardiman argues that the text messages were inadmissible because there was no proof that either he or Edmon carried out their planned robbery in March 2021. Hardiman misreads *D.R.C.*

[25]     The *D.R.C.* court did not hold that the defendant must have completed the crime before the prior act may be admitted as evidence of intent. Instead, it held that the State must prove that it was, in fact, the defendant who did the prior "act." Here, the act at issue in the March 2021 text messages was not a *completed* robbery, but the *planning* of the robbery itself. In fact, the State never argued that Hardiman and Edmon completed the planned robbery in March 2021. And there is no dispute that the March 2021 messages were exchanged between Hardiman and Edmon.

[26]     The facts of *D.R.C.* are also readily distinguishable. In *D.R.C.*, the trial court admitted evidence suggesting that the defendant's daughter had been molested to show the defendant's motive to murder her, but the State offered no evidence that the defendant was the one who molested her. Therefore, the evidence

suggesting that the defendant had molested his daughter was not properly admitted for "another purpose" under Evidence Rule 404(b). *D.R.C.,* 908 at 224.

[27] Similarly, in *Corbett v. State*, 179 N.E.3d 475, 489-90 (Ind. Ct. App. 2021), the trial court admitted evidence of three other attempted home invasions that had occurred in the area where the defendant had committed a home invasion. On appeal, Corbett argued that the evidence was inadmissible under Evidence Rule 404(b). "The State's theory appear[ed] to be that Corbett committed the attack on the [victims in the present case], so he must have committed the other attempted home invasions, and those other attempts explain his motive to enter the [victims]' home that night." *Id*. at 489-90. We rejected this "circular reasoning" and held that the evidence of the other attempted home invasions "could be relevant to motive—it could explain why Corbett attacked a family he seemingly had no connection to. But this is only relevant if he committed those other home invasions, and there is no evidence in the record that he did." *Id*. at 490.

[28] Here, however, Hardiman exchanged the text messages with Edmon in March 2021. And these messages detailed a plan to rob a person in a way almost identical to how Hardiman and Edmon robbed Fonville. The text messages were therefore admissible to show Hardiman's intent and to rebut his theory of

self-defense.[9]  Accordingly, we conclude that the trial court did not abuse its discretion by admitting the March 2021 messages into evidence to rebut Hardiman's claim of self-defense.[10]

## II. Self-Defense Instruction

[29]  Hardiman also argues that the trial court abused its discretion in instructing the jury regarding the defense of self-defense.  As we explained in *Paul v. State*:

> The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse.  To determine whether a jury instruction was properly refused, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given.  In doing so, we consider the instructions as a whole and in reference to each other and do not reverse the trial court for an abuse of discretion unless the instructions as a whole mislead the jury as to the law in the case.

---

[9] Hardiman makes no argument that the evidence was unduly prejudicial under Evidence Rule 403.  Even if he did, the trial court did not abuse its discretion by concluding that the probative value of the March 2021 text messages was not substantially outweighed by any concern of undue prejudice.

[10] In his reply brief, Hardiman cites *Gillespie v. State*, 832 N.E.2d 1112 (Ind. Ct. App. 2005).  In *Gillespie* the defendant stabbed and killed the victim during a fight.  The State presented evidence that on the night of the stabbing, the defendant had been drinking alcohol, was angry, and had threatened other people.  The State argued this evidence was admissible to show Gillespie's "state of mind."  *Id*. at 1117.  On appeal, a panel of this Court held that this evidence was irrelevant to whether the defendant had a reasonable belief that his own use of force was necessary to prevent serious injury to himself.  *Id*.  In contrast, the evidence at issue here—Hardiman's planning of an almost identical robbery just weeks prior to the robbery of Fonville—was highly relevant of Hardiman's intent, i.e., whether he merely planned to purchase marijuana or whether he intended to rob Fonville.

189 N.E.3d 1146, 1159 (Ind. Ct. App. 2022) (citations and internal quotations omitted), *trans. denied.*

[30]     Here, the trial court instructed the jury that:

> [A] person may not use force if he is committing a crime and there is an immediate causal connection between the crime and the confrontation. In other words, for the Defendant to lose the right of self-defense the jury must find that **but for** the Defendant's commission of a separate crime, the confrontation resulting in injury to Emanuel Fonville would not have occurred[.]

Tr. Vol. IV p. 170 (emphases added). Hardiman claims that this instruction was an incorrect statement of the law under our Supreme Court's holding in *Gammons v. State*, 148 N.E.3d 301 (Ind. 2020).

[31]     Before addressing *Gammons*, we first consider the case that *Gammons* cited—*Mayes v. State*, 744 N.E.2d 390 (Ind. 2001). In that case, the defendant shot and killed his girlfriend after accusing her of stealing his money. Mayes testified that his girlfriend reached for her purse, which he claimed caused him to fear that she was reaching for a gun. This, he claimed, is why he drew his own gun and shot her five times. At trial, the trial court instructed the jury on Mayes's claim of self-defense using the language from the self-defense statute: "[a] person is not justified in using force if . . . [h]e is committing, or is escaping after the commission[ ] of[,] a crime." *Id.* at 392 (citing Ind. Code § 35-41-3-2) (brackets in original).

On appeal, our Supreme Court noted that "[a] literal application of the contemporaneous crime exception would nullify claims for self-defense in a variety of circumstances and produce absurd results in the process." *Id.* at 393 The *Mayes* Court cited with approval the opinion of this Court in *Harvey v. State*, 652 N.E.2d 876 (Ind. Ct. App.1995), in which the defendant fatally shot the victim with an unlicensed firearm and claimed self-defense. The trial court in *Harvey* instructed the jury that a person carrying a handgun without a license could not avail himself of the defense of self-defense. The *Harvey* Court noted that:

> If [the contemporaneous crime exception to the self-defense statute] is to be taken literally, then no person may claim self defense if that person at the time he acts is coincidentally committing some criminal offense. For example, possession of a marijuana cigarette or the failure to have filed one's income tax returns could deny one the defense no matter how egregious, or unrelated, the circumstances that prompted the action. Read as a whole, the statute refutes such a construction.

652 N.E.2d at 877 (quoted in *Mayes*, 744 N.E.2d at 393-94). The *Mayes* Court agreed with this statement and observed that other jurisdictions had reached the same conclusion. *Mayes*, 744 N.E.2d at 393 (citing *Oregon v. Doris*, 51 Or. 136, 94 P. 44, 53 (Or.1908); *South Carolina v. Leaks*, 103 S.E. 549, 551 (S.C. 1920); *West Virginia v. Foley*, 35 S.E.2d 854, 861 (W.Va. 1945)).

[33] Accordingly, our Supreme Court in *Mayes* concluded that "because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-

defense." *Id.* at 394. "Rather, there must be an **immediate causal connection** between the crime and the confrontation. Stated differently, the evidence must show that **but for the defendant committing a crime**, the confrontation resulting in injury to the victim would not have occurred." *Id.* Notably, Justice Boehm concurred in result but was "concerned that this 'but for' test is too broad." *Id.* at 396. Justice Boehm wrote:

> There are many situations where 'but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred,' but where the defense of self-defense should be available. For example, take a situation similar to the one referred to in the majority opinion in *State v. Leaks*, 103 S.E. 549, 551 (1920). The defendant is illegally gambling and a fight erupts because the victim believes the defendant is cheating. This leads to the victim's death. Under these circumstances, the defendant should be free to claim self-defense. Similarly, if the victim attempts to take marijuana from the defendant and it leads to an altercation and the victim's death, self-defense should be available. In either case, the majority's "but for" test may be thought to be satisfied, and, if so, the defendant would be precluded from raising self-defense. In general, commission of a non-violent crime with no inherently predictable violent outcome should not negate the defense of self-defense.

*Id.* at 396-97.

[34] In *Gammons*, our Supreme Court revisited the question of when self-defense is available to a person committing a crime. The Court noted that it had held in *Mayes* that "'there must be immediate **causal connection** between the crime and the confrontation.'" *Gammons*, 148 N.E.3d at 304 (quoting *Mayes*, 744 N.E.2d

at 393) (emphasis in original). The trial court in *Gammons*, however, had instructed the jury that the defendant could not claim self-defense "if he was 'committing a crime that [wa]s directly and immediately **related to** the confrontation.'" *Id.* (alterations and emphasis in original). This, the Court held, was improper, writing:

> By requiring that the crime and confrontation just be joined or linked, neither "connected" nor "related" suggest the element of causation demanded by *Mayes*. Justice Boehm's concurrence in *Mayes* presaged this diminution of the standard, warning that the Court—by rephrasing that "the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred"—left open circumstances where a "defendant should be free to claim self-defense." *Mayes*, 744 N.E.2d at 394 (majority opinion) (emphasis added), 396 (Boehm, J., concurring). **We now concur with Justice Boehm: "this 'but for' test is too broad."**[11] *Id.* at 396. Read literally, this formulation could foreclose the defense in an instance where a defendant's crime was tenuously connected with the confrontation, like the defense being unavailable to a defendant who "is illegally gambling and a fight erupts because the victim believes the defendant is cheating[, leading] to the victim's death." *Id.* at 396-97 (citing *State v. Leaks*, 114 S.C. 257, 103 S.E. 549, 551 (1920)). Since this "but for" test can impede the defense in the same unjust and absurd ways as a literal reading of the statute, **we reject that rephrasing and reiterate that self-defense is barred only when there is "an**

---

[11] The *Gammons* Court referred to the instruction in *Mayes* as a "but for" test. The language in the instruction at issue in *Gammons*, however, did not use the term "but for," and instead instructed the jury that "'a person may not use force if,' among other things, 'he is committing a crime that is directly and immediately related to the confrontation.'" *Gammons*, 148 N.E.3d at 303 (record citation omitted).

**immediate causal connection between the crime and the confrontation."** *Id*. at 394 (majority opinion).

*Gammons*, 148 N.E.3d at 304-05 (emphases added).

[35] Here, the trial court's instruction includes the proper language from *Gammons*: "a person may not use force if he is committing a crime and there is an immediate causal connection between the crime and the confrontation." Tr. Vol. IV p. 170. But it also contains the improper "but for" language disapproved of in *Gammons*: "for the Defendant to lose the right of self-defense the jury must find that but for the Defendant's commission of a separate crime, the confrontation resulting in injury to Emanuel Fonville would not have occurred." Tr. Vol. IV p. 170.

[36] Hardiman claims that the inclusion of the "immediate causal connection" language in the instruction does not cure the improper "but for" language; instead, he claims, it equates the "immediate causal connection" language with the "but for language." That is, he claims that the instruction essentially defines an "immediate causal connection" as being the same as finding that "but for" his commission of a crime, the confrontation would not have happened.

[37] The inclusion of the "but for" language contained in the trial court's instruction was improper, as that language has been disapproved of by our Supreme Court

in *Gammons*.[12]  Yet the trial court's instruction also properly informed the jury that, before Hardiman lost his right to self-defense, there must have been an immediate causal connection between his crime and the confrontation that led to his shooting Fonville, which is precisely what our Supreme Court held in *Gammons*.[13]  We conclude that this instruction was incorrect.  *See Gammons*, 148 N.E.3d at 304-05.  Ultimately, however, the self-defense instruction was harmless error in this case.  If we find a challenged instruction to be erroneous, we presume that the error affected the verdict and will reverse the defendant's conviction unless "the verdict would have been the same under a proper instruction." *Gammons*, 148 N.E.3d at 303.

---

[12] Prior to 2021, the pattern jury instruction on self-defense did not include the "but for" language disapproved in *Gammons*.  *See* Ind. Pattern Crim. Jury Inst. No. 10.0300 (4th. ed., Release No. 19A, Feb. 2020) (stating in relevant part that "a person may not use force if: . . . (he/she is committing a crime that is directly and immediately connected to the (confrontation) (use a descriptive term based on evidence)").  It was not until after *Gammons* disapproved the "but for" language that, inexplicably, the "but for" language appeared in the pattern jury instruction.  *See* Ind. Pattern Crim. Jury Ins. No. 10.0300 (4th ed., Release No. 20A, Feb. 2021) (stating in relevant part that "a person may not use force if: . . . (he/she is committing a crime that is directly and immediately connected to the (confrontation) (use a descriptive term based on evidence).  In other words, for the defendant to lose the right of self-defense, the jury must find that, but for the Defendant's commission of a separate crime, the confrontation resulting in injury to [victim's name] would not have occurred.").  The comment to the instruction stated: "'Immediate causal connection' is a term of art and should not be paraphrased for fear of reversal. See *Gammons v. State* 148 N.E.3d 301 (Ind. 2020).  The 'but for' section from the previous comments paragraph has been expressly added to emphasize this point." Ind. Pattern Crim. Jury Instr. No. 10.0300, cmt. (4th Ed., Release No 20A, Feb. 2021).  This language persisted in the pattern instruction update issued at the end of 2021.  *See id.* (4th ed., Release No. 21A, Dec. 2021).  Fortunately, the current version of the pattern instruction has corrected this error and properly tracks the language in *Gammons*: "a person may not use force if . . . (he/she is committing a crime and there is an immediate causal connection between the crime and the confrontation (use a descriptive term based on evidence)." Ind. Pattern Crim. Jury Inst. No. 10.0300 (4th ed., Release No. 22A, Jan. 2023).

[13] During the State's closing argument, when the prosecutor argued that "you cannot avail yourself of self-defense when you're committing a crime," he quickly noted that the instruction required there be an "immediate causal connection between a crime and a complication [sic].  I would submit to you that all the evidence suggests there's immediate . . . causal connection."  Tr. Vol. IV p 176.

[38] Here, the evidence was overwhelming that Hardiman and Edmon planned to meet with Fonville to rob him, not that Hardiman merely planned to purchase marijuana from Fonville. Hardiman admitted to shooting Fonville, and there was no evidence corroborating Hardiman's claim that Fonville was armed. Hardiman also fled the scene and did not seek medical help for Fonville. Hardiman deleted his social media accounts immediately after the shooting; Hardiman disposed of the weapon he used to shoot Fonville; and Hardiman sent Edmon a link about robbing someone with a friend for the first time. We, therefore, conclude that the jury's verdict would have been the same under a proper instruction.

## Conclusion

[39] The trial court did not abuse its discretion by admitting evidence under Evidence Rule 404(b) of text messages between Hardiman and Edmon concerning a robbery they planned in March 2021 because such evidence was admissible to show Hardiman's intent to rob Fonville and rebut Hardiman's claim of self-defense. Further, although the trial court's instruction regarding the availability of self-defense contained the disapproved "but for" language, the error in instructing the jury was harmless given the overwhelming evidence of Hardiman's guilt. We, therefore, affirm the judgment of the trial court.

[40] Affirmed.

Weissmann, J., and Kenworthy, J., concur.